[Civ. No. 5306.   First Appellate District, Division One.—April 16, 1927.]

## ELIZABETH C. NICKELL, Appellant, v. JEROME D. ROSENFIELD, Respondent.

[1] APPEAL — INSTRUCTIONS — EVIDENCE. — No reversal of a judgment will be ordered by reason of the lower court's action on the giving or refusal of instructions if it appears from the record that the jury were fully and fairly instructed on all of the points on the case material thereto; and no reversal will be ordered unless the error complained of is such as to prevent a full and fair hearing, and thereby worked a substantial injustice to either of the parties.

[2] NEGLIGENCE—PERSONAL INJURIES TO PEDESTRIAN AT STREET CROSSING—DUTY OF PEDESTRIAN TO LOOK IN PARTICULAR DIRECTION—PREJUDICIAL INSTRUCTION.—In this action for damages for personal injuries suffered by a pedestrian who was struck by an automobile while crossing from the easterly side of a street at its intersection with another street, it was prejudicial error,

---

1.  See 2 Cal. Jur. 1026; 24 Cal. Jur. 861; 14 R. C. L. 812.
2.  See 13 R. C. L. 293.

under the facts of the case, for the trial court to charge the jury that the duty of the plaintiff to use ordinary care was not fully performed by merely looking to the left as she stepped from the curb to the street, but that she must particularly direct her attention to the left while she was crossing the easterly side of the street.

[3] ID.—RIGHTS OF PEDESTRIAN AND AUTO DRIVER—MANNER OF EXERCISE OF.—The rights of a pedestrian and auto driver are conceded to be relative to the extent that each must so restrict and use his right as to permit the other the full benefit of what is his.

[4] ID.—CARE—EVIDENCE.—The facts and circumstances of each case control the amount of care required on the part of both pedestrians and drivers of vehicles, and nothing approaching a rule can be formulated other than the basic principle of ordinary care under the circumstances.

[5] ID.—INSTRUCTIONS—CONSTRUCTION.—The general rule is that instructions are to be read together and construed as a whole, but this rule does not go so far as to hold that one or two detached general statements are sufficient to overcome the force of a direct instruction upon the particular facts of the case.

[6] ID.— REFUSED INSTRUCTIONS — SUBJECT COVERED BY GIVEN INSTRUCTIONS—ABSENCE OF ERROR.—In such action, conceding that in point of law instructions requested by plaintiff and refused by the trial court were correct, no error was committed where the instructions given sufficiently covered the subject.

---

(1) 4 C. J., p. 1168, n. 98; 38 Cyc., p. 1779, n. 75.   (2) 42 C. J., p. 1031, n. 6; 29 Cyc., p. 645, n. 50.   (3) 42 C. J., p. 1032, n. 8. (4) 42 C. J., p. 881, n. 93; p. 1134, n. 47.   (5) 38 Cyc., p. 1778, n. 73. (6) 38 Cyc., p. 1711, n. 19.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Reversed.

The facts are stated in the opinion of the court.

---

3. Rights and duties of pedestrians and vehicles in highway, notes, 9 Am. St. Rep. 878; 48 Am. St. Rep. 366; 4 Ann. Cas. 398; Ann. Cas. 1914A, 249. See, also, 13 Cal. Jur. 373; 13 R. C. L. 279. Reciprocal duties of operators and pedestrians to use care, notes, 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.

4. See 13 R. C. L. 281, 293.

5. See 24 Cal. Jur. 857; 14 R. C. L. 817.

6. See 2 Cal. Jur. 806.

Kenton A. Miller and W. A. Alderson for Appellant.

Paul Nourse, Culver & Nourse and Allan Davis for Respondent.

PARKER, J., *pro tem.*—In this action plaintiff sought to recover damages for injuries alleged to have been suffered by her when struck by an automobile negligently driven by defendant.

The defendant answered, denying negligence on his part, and affirmatively alleging that the injuries of plaintiff were caused by her own negligence.

A trial by jury was had and a verdict returned in favor of defendant. From the judgment entered pursuant to this verdict plaintiff appeals, and brings here also for review the order of the lower court denying her motion for a new trial.

The entire controversy here revolves about the instructions given to the jury. Appellant calls specific attention to and rests her appeal upon the lower court's action with reference to three instructions, one of which was given and the remaining two requested by appellant and not given.

[1] It is settled law in this state that no reversal of a judgment will be ordered by reason of the lower court's action on the giving or refusal of instructions if it appears from the record that the jury were fully and fairly instructed on all of the points in the case material thereto. And, further, no reversal of a judgment will be ordered unless the error complained of is such as operated to prevent a full and fair hearing and thereby worked a substantial injustice to either of the parties.

With these principles in view it may be well to briefly state the facts of the case as the record before us discloses them and to inquire into the instructions given the jury.

It is admitted that plaintiff was struck by defendant's automobile, driven by defendant, and that plaintiff sustained injuries as a result thereof. Plaintiff, a pedestrian, was crossing Figueroa Street in the city of Los Angeles at the intersection of that street with Third Street. She was going in a westerly direction and was in the usual place for pedestrians, going straight across from the east side to the west side of Figueroa Street. Defendant was driving an

automobile on Figueroa Street going in a northerly direction. The accident occurred in April, 1921, at or about the hour of 9 o'clock P. M. The section surrounding Figueroa and Third Streets is closely built up and a busy section of a busy city. Plaintiff had lived in the neighborhood for some years and was familiar with the locality and the conditions surrounding and the traffic thereabouts. Plaintiff testified, and it is not contradicted, that before she attempted to cross the street and before leaving the curb she looked to the left and to the right and saw no cars approaching. She states that she saw a car which from its lights seemed to be about a block away, far enough, in her opinion, as not to be a hazard to her. Having thus advised herself of the traffic she started across and in crossing looked to the left and in front. There is further the testimony of plaintiff and other witnesses that immediately following the accident defendant stated that his lights were not in good order and for that reason he did not see the plaintiff.

Defendant testified that he was driving northerly on Figueroa Street and that he approached the intersection at a rate of speed not in excess of fifteen miles per hour; that when entering the intersection he reduced the speed perceptibly. The first time defendant saw Mrs. Nickell she was on the curb and he was about twenty feet south of the intersection, and she was then facing south and seemed to be looking directly at him. He had not then entered the intersection. When he did enter his attention was occupied by the traffic going west on Third Street. From his testimony it appears that one auto in the west-going traffic crossing directly in front of him compelled his turning to avoid it. Almost immediately in getting himself straightened out again he was across the intersection, and then again saw the plaintiff, Mrs. Nickell, within a few feet of him and directly in the path of his machine. His efforts to avoid her proved futile and the accident happened. Just where it happened is the subject of conflict, but it is not questioned but that she was quite near the center of the street, which street was sixty feet in width. The defendant states that from his first observation of the plaintiff and her position he concluded that she had seen him and was waiting his passing before she would cross.

This *résumé* of the facts covers the entire case as presented. The determination of the issues was submitted to the jury and the law given by the court.

The trial court instructed the jury fully as to what the claims of the parties were; as to the burden of proof and such other general instructions as are proper in like cases. The trial court fully and properly informed the jury as to the duty devolving upon defendant as the driver of a motor vehicle on the public highway, and as to what acts or omissions on his part would, within the pleadings, impose upon him a liability to plaintiff. However, the trial court laid stress throughout the instructions on the duty of plaintiff, and almost every instruction regarding her right to recover carried with it the admonition as to the consequences of her own lack of ordinary care. The jury was told that the mere fact of the accident raised no presumption of negligence as against defendant, and that if the evidence was as consistent with neglect of duty on the part of plaintiff as it was with neglect of duty or care on the part of defendant, and that both were equally probable under the evidence, the verdict must be for the defendant. The jury was further instructed that if they believed from the evidence that plaintiff was guilty of negligence which contributed directly or proximately, no matter how slightly it contributed, to the collision complained of the verdict must be for the defendant, and this would not be altered by the fact that the jury might believe that defendant was more negligent than plaintiff, if it was shown that but for the concurring and cooperative fault of plaintiff and defendant such collision would not have occurred.

No criticism is offered as to the correctness of any of these instructions, but they are referred to here to the end that the instruction complained of may be better appreciated and its connection with the charge as a whole and its probable effect measured.

[2] Then came the instruction attacked, as follows: "In crossing Figueroa street it was the duty of plaintiff in the exercise of ordinary care for her own protection to look to the left and to the right as well as ahead of her, and to particularly direct her attention to her left while she was crossing the easterly side of Figueroa street, and this duty was not fully performed by merely looking to the left as

she stepped from the curb to the street, but the duty to exercise ordinary care in this respect was imperative upon her during all the time that she was crossing; and, therefore, if you believe from the evidence that the plaintiff failed to perform this duty, and that her failure so to do was a proximate cause of the accident and the injuries sustained by her, then your verdict must be in favor of the defendant, even though you find from the evidence that the defendant was also guilty of negligence.''

At the outset respondent contends that if it were conceded (and he does not concede) that the court placed too high a duty upon plaintiff in demanding that she look to the right, nevertheless as no question is here involved as to traffic from the right, that part of the instruction must be disregarded. We agree with the respondent in this with the reservation that the placing of too high a duty upon plaintiff might leave the jury generally impressed that the degree of care incumbent upon her for her own protection was far greater than the law required. The particular part of the instruction, then, subject to review is that part which tells the jury that the duty of the plaintiff to use ordinary care was not fully performed by merely looking to the left as she stepped from the curb to the street, but that she must particularly direct her attention to the left while she was crossing the easterly side of Figueroa Street.

Respondent seeks further to sustain the correctness of the instruction by pointing out that what the court told the jury was that the plaintiff's duty was to exercise ordinary care, and this qualified and explained the entire instruction. However, it must be noted that the court first advised the jury as to the duty of plaintiff in the premises, and then used the term ''ordinary care'' qualified by the words ''in this respect.''

A review of the authorities gives really little aid in determining the question here presented. Cases beyond number have been before the courts with a constant variance in facts. The courts have found it impossible to lay down any rule or rules which have the effect of establishing a definite course of action for all parties under all conditions. In the case of *Niosi* v. *Empire Steam Laundry*, 117 Cal. 257 [49 Pac. 185], the rule was announced that a foot traveler was negligent who fails to look both ways before crossing

a highway where vehicles frequently pass. The doctrine of this case was subsequently affirmed in a later case (*Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8]). In the later case of *Burgesser* v. *Bullocks,* 190 Cal. 673 [214 Pac. 649], the court reviews all of the cases on the subject of the relative rights and duties of pedestrians and automobile drivers. In commenting upon the Niosi case and the cases following it the court declares that these cases must be read in the light of the facts involved in each particular case. The court in the Burgesser case, after reciting the facts of *Niosi* v. *Empire Steam Laundry,* concludes that the rule announced in the latter case meant nothing more than that it was the duty of a pedestrian who steps from the curb into a narrow street where traffic is heavy, to look in the direction from which such traffic would be likely to come before stepping from the curb. The case cited, *Bergesser* v. *Bullocks,* is a complete treatise on the case-made law of the subject here before us. And the conclusion reached there is that it is a question of fact for the jury to determine whether the conduct of a pedestrian under all of the circumstances at the time and place and conditions of traffic was or was not negligent. Without analyzing each case, the following authorities are helpful in further illustrating the same point: *Evers* v. *Stratton,* 71 Cal. App. 448 [235 Pac. 656]; *Raymond* v. *Hill,* 168 Cal. 473 [143 Pac. 743]; *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335 [208 Pac. 125]; *Haines* v. *Fewkes,* 190 Cal. 477 [213 Pac. 490]; *O'Dowd* v. *Newnham,* 13 Ga. App. 220 [80 S. E. 36]. All of the authorities agree on two principles: First, the pedestrian and the driver of a vehicle have equal and reciprocal rights in the use of the highway; and this rule goes so far as to hold that in the absence of statutory or local regulation this right extends to all sections of the highway, whether at established places of crossing or elsewhere thereon.

When we speak of a person having a right we must necessarily refer to a civil right as distinguished from the elemental idea of rights absolute. We must have in mind a right given and protected by law, and a person's enjoyment thereof is regulated entirely by the law which creates it. If we were to consider these rights as absolute nothing but chaos could result, and instead of each enjoying the right both would be deprived of its enjoyment. **[3]** Therefore,

the rights of pedestrian and auto driver are conceded to be relative to the extent that each must so restrict and use his right as to permit the other the full benefit of what is his.

[4] The second principle upon which all agree is that the facts and circumstances of each case control the amount of care required on the part of both pedestrians and drivers of vehicles. Nothing approaching a rule can be formulated other than the basic principle of ordinary care under the circumstances.

Applying these principles to the case at bar we think that the facts before the court did not warrant the instruction, and that the giving thereof was prejudicial to the plaintiff and deprived her of a fair and impartial trial. The instruction took from the jury the right to determine the negligence of plaintiff by particularly specifying just what acts on her part were negligent. By way of illustration, under the instruction the jury were not left to determine whether or not the defendant had good or bad lights, or whether his car was observed by plaintiff or, in the exercise of ordinary care, could have been observed, and this was an issue in the case. It seems readily apparent that if a pedestrian in crossing a street looks before leaving the curb and sees nothing approaching within any short distance, and there is nothing shown that he or she must have seen by ordinary use of the faculty of sight, then it is eminently proper to proceed without constant watch in the direction of that particular traffic. It is undisputed in the instant case that when plaintiff left the curb to cross Figueroa Street there was likewise auto traffic on Third Street crossing Figueroa Street, and that plaintiff was proceeding with the traffic rather than against it. The fact that she saw nothing in near approach on Figueroa Street, coupled with the fact of traffic crossing as it was, would seem quite sufficient assurance of her safety. The defendant admittedly was dodging through the same traffic at night and in an intersection and almost at the very spot where a prudent person might expect pedestrians. We can concede, perhaps, that a pedestrian who perceives an automobile approaching—or even go as far, for the purpose of illustration, to concede that if the pedestrian, in the exercise of ordinary care, should have seen the approaching auto —would be negligent in leaving a place of safety to rush headlong into danger. But we cannot concede that in an

action of this character when the facts are disputed a trial court can fix ·the standard of conduct with reference to specific acts without the jury's determination of the facts.

Upon an analysis of the instruction involved, and considering it with all of the instructions, we feel that the jury were told that even if they found the defendant was driving with totally insufficient lights at night-time, in a section poorly lighted, and that plaintiff was unable by reason of said defective lights to see defendant's car or to judge its distance, and ·after first attempting to ascertain the condition of traffic and the hazards imminent she, in the belief of her security, left the curb at the usual place of crossing, nevertheless as a fact she was negligent in not keeping her attention focused upon the direction whence came the defendant. There can be no question that under the theory of the case and the conditions surrounding, that if this were *per se* negligence, then it must have been a proximate cause of the accident, and comment on this phase of the instruction is unnecessary.

Construing the. instruction as we do, and mindful of the law governing, we conclude that the giving thereof was erroneous and highly prejudicial.

[5] We are not forgetful of the general rules that instructions are to be read together and construed as a whole, but we do not feel that this rule goes so far as to hold that one or two detached general statements are sufficient to overcome the force of a direct instruction based upon the particular facts of the case. Even in the absence of rules of construction, common experience indicates that the specific declaration of a principle controls over general language. In construing statutes the courts are bound·to give heed and attention to specific provisions as against general ones. And upon the same principle we feel, should we incline to the construction of a charge to a jury, without, however, all of the niceties involved in statutory construction. Every trial judge knows from experience that many general instructions are quite puzzling to the average juror, striving to get every word of counsel from the court; but when the court takes up the particular situation involved, and bases a charge thereon by applying the facts to the law, instantly the jury becomes directly interested. And then for a reviewing court to intervene and hold that the charge

did not mean exactly what it said, but that upon a studious analysis some other meaning could be read into it would be a long step nearer to doing away with instructions entirely.

[6] Appellant's points with reference to the instructions requested by her and refused need little attention. Conceding that in point of law the proffered instructions are correct, yet the instructions given sufficiently covered the subject. The instructions offered and refused were slightly argumentative in phraseology, and stated general observations which were almost of the commonplace and on matters concerning which a general knowledge might be presumed.

This entire field of automobile drivers and pedestrians offers a fertile field for legislative action. It is the purpose of government to protect the lives and property of its citizens; and when the statistics available would indicate that more fatalities occur in daily traffic throughout the year than are occasioned by war, famine, or pestilence, it certainly calls for something more definite than a general rule of ordinary care under the circumstances. While it is not our function to suggest, nevertheless it would seem reasonable that when in many jurisdictions, as a matter of law and almost universally as a matter of fact, the pedestrian is charged with the burden in crossing a street at places other than the intersections, that one place should be a refuge, and the burden there shifted. In the congested areas of larger cities the difficulty is greatly overcome by constant patrol and mechanical device; and while awaiting the time when a like condition may be established at every crossing, there should be some definite regulations and some standards established that would clearly outline a course of conduct on the part of travelers of all sorts tending to promote safety.

The judgment and order are reversed and the cause remanded for a new trial.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1927.