[S. F. No. 19069.   In Bank.   Apr. 19, 1955.]

JOSEPH FRANCIS, Appellant, v. CITY AND COUNTY
OF SAN FRANCISCO et al., Respondents.

Jack H. Werchick for Appellant.

Dion R. Holm, City Attorney, Joseph F. Murphy and Richard Saveri, Deputy City Attorneys, for Respondents.

SHENK, J.—This is an appeal from a judgment entered on a verdict in favor of the defendant in an action for damages for personal injuries sustained by plaintiff pedestrian in a collision with a San Francisco municipal railway bus. There is also an appeal from a denial of a motion for a new trial by operation of law because of the failure of the trial court to determine the motion within the statutory period. There is no appeal from the denial of this motion (Code Civ. Proc., § 963) and it should be dismissed.

Sutter Street runs approximately east and west and is intersected at right angles by Powell Street. A north-south pedestrian lane, the boundaries of which are painted with white lines, crosses Sutter Street just east of this intersection. There were no automatic signals at this location on April 17, 1950, but a traffic officer was stationed there to direct and control traffic. At 5 p. m. on that day the traffic was fairly heavy, the streets were dry, the weather was clear, it was daylight, and visibility was good. No cars were parked along Sutter Street because it was a ''tow-away'' zone from 4 to 6 p. m. Plaintiff testified that he had walked westerly on the north sidewalk of Sutter Street to Powell Street and there turned left, intending to cross to the south side of Sutter Street. He waited for a minute or so on the sidewalk about two feet west of the easterly boundary of the crosswalk. A sidewalk pole was to his left. Traffic was then flowing east-west. As soon as he saw the traffic officer raise his arms in a gesture which indicated that east-west traffic should stop and heard him blow his whistle, plaintiff looked to his left and saw the bus, some 50 to 75 feet away from where he stood, proceeding westerly up Sutter Street in the lane nearest the sidewalk. Plaintiff made no estimate of its speed. He then stepped off the sidewalk into the pedestrian lane without again looking to the left or right. He had taken but a few steps when he saw the bus close to him and was immediately struck by the right front corner of the bus on the left side of his body. He was knocked unconscious and suffered the injuries complained of.

Defendants denied negligence and pleaded contributory negligence on the part of plaintiff as a proximate cause of his injuries. The driver of the bus testified that he first saw the traffic officer when he was 50 to 75 feet away; that the bus was then travelling between 10 and 12 miles per hour; that he had an unobstructed view of the street and sidewalk ahead of him; that he saw some five or six persons waiting to cross

the street but none started to cross so he proceeded through the intersection; that the officer was then motioning for traffic to go easterly and continued to do so until the bus passed the center of the intersection, and that he (the driver) did not know he had struck anyone until so informed by a passenger.

The traffic officer testified that he did not see the accident. He was standing in the center of Sutter Street at or close to the westerly line of the east pedestrian lane and thought he must have been facing south. A short time before the accident the traffic had been going east and west but he did not know how long it had been so flowing. He could not recall if there was any traffic moving in an easterly direction. He could not recall what traffic was moving westerly at that time. Nor could he recall when he first noticed the bus moving up Sutter Street towards Powell, how long the traffic had been going east-west when he last saw the bus about a quarter block from the intersection, or whether he noticed any pedestrians waiting on the sidewalk. He heard a thud and a yell and, on turning, saw a man lying on his back in the crosswalk about a foot from the north curb. The bus was then in the middle of the intersection.

A defense witness testified that she was standing on the northeast sidewalk on Sutter Street waiting for the east-west traffic to change so that she could cross the street when "all of a sudden a man came by me and walked into the side of [the bus] just near the back door of the bus." Another defense witness testified that he was standing on the sidewalk about 15 to 20 feet from the northwest curb on Sutter Street for four or five minutes prior to the accident; that he had watched the traffic flow north and south, saw the traffic officer change the traffic to east-west and saw the bus stop or slow down prior to reaching the intersection waiting for traffic to change, and "when the traffic changed the bus came across the street . . . and as it went by the northeast intersection of Powell and Sutter Streets a gentleman walked into the side of the bus" at a point to the rear of the front door. The traffic officer made no examination of the bus to determine the point of impact. The investigating officer testified that he was not able to make an exact determination of the point of contact but "it was somewhere around the right front part of the bus."

▮ Plaintiff contends that the court committed prejudicial error in the giving of the following instruction:

"It is a duty devolved upon Mr. Francis, as the act of an ordinarily prudent person, that immediately before placing himself in a position of danger, to look in the direction in which danger is to be anticipated. This is a continuing duty and it is not met by looking once and then looking away. It is not a duty to look only one way and continue so to look, but rather to look in the direction or directions of anticipated danger and to continue to be alert to safeguard against injury."

Similarly worded instructions have been held to be prejudicially erroneous as applied to the factual situations presented in *Salomon* v. *Meyer*, 1 Cal.2d 11, 13 [32 P.2d 631]; *Goodwin* v. *Foley*, 75 Cal.App.2d 195 [170 P.2d 503]; *Long* v. *Barbieri*, 120 Cal.App. 207, 212 [7 P.2d 1082]; and *Nickell* v. *Rosenfield*, 82 Cal.App. 369, 373-375 [255 P. 760]. Each involved a pedestrian struck down in a crosswalk who looked before leaving the safety of the sidewalk but who did not maintain a continuous lookout while crossing the street. The instruction in each case was held to have fixed for the jury as a measure of ordinary care a continuous duty while crossing to look "to the right and to the left" or "in the direction from which danger was to be anticipated" without requiring the jury to first find that an ordinary and prudent person, crossing at that time and place and under the existing conditions of traffic, would have maintained such constant surveillance. ■ It is usually a question for the jury and not for the court whether a pedestrian has used due care in crossing the street and in making the decision that he can cross with safety. There is no rule of law that irrespective of existing circumstances a pedestrian must look "continuously" or be arbitrarily adjudged guilty of contributory negligence. (*Filson* v. *Balkins*, 206 Cal. 209, 212 [273 P. 578]; *Long* v. *Barbieri*, *supra*, 120 Cal.App. 207, 215; *Nickell* v. *Rosenfield*, *supra*, 82 Cal.App. 369, 376; 164 A.L.R. 53, et seq.)

■ Neither the pedestrian nor the driver of an automobile has a superior right to the use of the street. (*Burgesser* v. *Bullocks*, 190 Cal. 673, 675 [214 P. 649].) Each must exercise the care required of a reasonable and prudent person under the existing circumstances. ■ Even where a right of way is given by statute, if conditions so require it to avoid injury to others, the right of way must be yielded. No general rule may be laid down which will fit all circumstances as to the duty of care required of a pedestrian in crossing

a street. In *White* v. *Davis*, 103 Cal.App. 531, 542 [284 P. 1086], the court attempted to draw the following general rule from a consideration of the case law on this subject, namely: "Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury." The difficulty in drawing such a generalization is obvious. It is not necessarily true that it is usually a question of law where a pedestrian "looks stright ahead without glancing to either side." ▌ A plaintiff who looks before leaving his place of safety on the sidewalk and concludes from his observations that there is no probable danger to be apprehended, either because no cars are approaching or because none is close enough to appear to endanger his crossing, or a plaintiff who crosses in a pedestrian lane with the traffic signal and relies on the assumption that any cross traffic approaching will observe statutory and local traffic regulations and there is evidence that he made reasonable observations to determine his safety, cannot be said to be guilty of contributory negligence as a matter of law solely because he fails to keep looking "continuously" or "to the left and to the right" as he crosses. (*Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 838 [161 P.2d 673, 164 A.L.R. 1] and cases cited.)

▌ Nor is it sufficient to take the case from the jury because all the witnesses but one testify to facts that would justify the conclusion that the pedestrian actually was negligent at such time and place. The direct evidence of a witness who is entitled to full credit is sufficient for proof of any fact. (Code Civ. Proc., § 1844.) Here the plaintiff's testimony was credible and it was not shaken or impeached. If the jury believed him, its verdict in his favor would have been supported by the evidence.

▌ The issue here is not that the plaintiff looked and did not see what was plainly visible or, seeing was indifferent to his safety. He admitted seeing the bus. It may be assumed from his testimony that he reasonably concluded that no danger was to be anticipated from that source, either because of the distance of the bus from the crosswalk, its admitted speed of 10 to 12 miles per hour, or because of his reliance

upon the assumption that the bus driver would obey the signal which plaintiff thought he had seen the traffic officer give. There was no testimony as to any other traffic that constituted a source of anticipated danger at that moment to plaintiff. It is a question of fact whether a reasonably prudent person might have concluded that it was safe to enter the crosswalk under such circumstances without maintaining a constant lookout. It was for the jury to determine whether plaintiff was guilty of contributory negligence. (*Mann* v. *Scott*, 180 Cal. 550, 554 [182 P. 281].)

Even if the jury had determined all factual issues in favor of plaintiff, it was in effect advised by the challenged instruction that plaintiff was guilty of contributory negligence because he did not continue to look to either side while crossing the street. Such negligence would be a complete bar to plaintiff's recovery. The prejudicial effect of such an instruction is readily apparent.

Defendants argue that the instruction merely states the proposition of law that before placing himself in a position of danger a pedestrian has the duty to look in the direction from which danger may be anticipated and to continue to be alert to safeguard against injury. "The vice of the instruction here complained of lies in the unqualified statement that 'this is a continuing duty, and is not met by looking once and then looking away.' Whenever there is room for an honest difference of opinion between men of average intelligence the question of whether the plaintiff was negligent in failing to look again in the direction from which the defendant's car was approaching is a question of fact for the jury and the finding of the triers of fact is conclusive. (*McQuigg* v. *Childs*, 213 Cal. 661 [3 P.2d 309].)" (*Salomon* v. *Meyer*, 1 Cal.2d 11, 15 [32 P.2d 631].)

The admonition has been frequently stated that it is dangerous to frame an instruction upon isolated extracts from the opinions of the court. (*Hall* v. *San Francisco*, 188 Cal. 641, 643-644 [206 P. 459]; *Pullen* v. *Heyman Bros.*, 71 Cal.App.2d 444, 452 [162 P.2d 961]; *Long* v. *Barbieri*, *supra*, 120 Cal.App. 207.)

The giving of an erroneous instruction is not cured by the giving of other correct instructions where the effect is simply to produce a clear conflict in the instructions and it is not possible to know which instruction was followed by the jury in arriving at a verdict. (*Westberg* v. *Willde*, 14 Cal.2d 360, 371 [94 P.2d 590]; *Goodwin* v. *Foley*, *supra*, 75

Cal.App.2d 195, 200 and cases cited.) An examination of the entire charge to the jury does not convince us that the error complained of was cured by the other instructions.

The court instructed the jury that "in order to avoid injury to himself, plaintiff was bound to have exercised reasonable care to avoid the same, that is, he was bound to use such care and diligence as a reasonable and prudent person would have exercised under the circumstances." It further instructed the jury that "the amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person would apprehend in the situation" and that "the plaintiff . . . had the right to assume that the bus driver would exercise ordinary care and caution in the operation of his vehicle." The challenged instruction was followed by an instruction that "it is the duty of a pedestrian in crossing a city street to use such reasonable care as the conditions demand to see passing vehicles and avoid colliding with them." These instructions do not overcome the effect of the challenged instruction as to the pedestrian's "continuing duty."

The suggestion is advanced by defendants that the challenged instruction is analogous to instructions upheld in *Taha* v. *Finegold*, 81 Cal.App.2d 536 [184 P.2d 533] and in *Morris* v. *Purity Sausage Co.*, 2 Cal.App.2d 536, 542 [38 P.2d 193]. In the Taha case the jury were advised (81 Cal.App.2d at 539-540) that "the duty of a pedestrian to be vigilant and alert, and looking for approaching traffic, *at such times and places as an ordinarily prudent person acting under like circumstances would direct his attention,* is a continuing duty and such duty is not necessarily met by a pedestrian, whether in a pedestrian crosswalk or otherwise, by merely looking once and then looking away, *unless an ordinarily prudent person acting under like circumstances would so conduct himself.*" The words which we have italicized demonstrate without further discussion the saving features in the Taha instruction. Similarly, in the Morris case the jury was instructed (2 Cal.App.2d at p. 542) that a pedestrian who attempts to cross a street at other than a regular crossing place must exercise greater precautions than at an established crossing and "that the observance of due care under such circumstances is not fulfilled by merely looking to the left and right as he steps upon the street; he must exercise that care during all the time that he was crossing." The jury was left free to decide what would constitute due care

during the time the pedestrian was crossing the street. Most of the other cases cited by the defendants may be distinguished upon their facts or the issues involved. We find no merit in defendant's assertion that the great weight of authority is completely contrary to *Salomon* v. *Meyer, supra,* 1 Cal.2d 11, and *Goodwin* v. *Foley, supra,* 75 Cal.App.2d 195, on this question.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is reversed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.