[Civ. No. 60993. Second Dist., Div. Five. Aug. 11, 1982.]

ROBERT WILLIAM HARGRAVE et al., Plaintiffs and
Appellants, v.
WILLIAM WINQUIST et al., Defendants and Respondents.

COUNSEL

Allan F. Grossman and Morris N. Karch for Plaintiffs and Appellants.

Ives, Kirwan & Dibble, Melvin F. Seifert and Herbert Jung for Defendants and Respondents.

OPINION

**FEINERMAN, P. J.**—Plaintiffs, Robert and Arlene Hargrave, brought suit against defendants, William and Verna Winquist, alleging that their negligence was the cause of injuries suffered by plaintiffs as a result of a four-car freeway accident. After a jury trial, a special verdict was rendered finding defendants to have been free of negligence. Plaintiffs appeal from the judgment in defendants' favor.

Plaintiffs contend that the judgment must be reversed because of claimed prejudicial error in the giving of certain jury instructions. While many of the contentions raised by plaintiffs are without merit, we have concluded that the trial court erred in giving certain conflicting instructions, that, under the facts of this case, the error was prejudicial, and that the judgment must be reversed.

FACTS

Uncontradicted testimony at the trial established that the freeway accident happened in the following manner. The accident occurred on December 16, 1974, at approximately 10:30 to 10:45 a.m. Plaintiff, William Hargrave was traveling southbound on the San Diego Freeway in the number four, or slow lane, in a 1969 Ford pickup truck. Defendants William and Verna Winquist were also traveling southbound on the San Diego Freeway, but in the number one, or fast lane. They were in a green, 1973 Chrysler Imperial. Just south of the Roscoe Boulevard overpass, a dark blue-green pickup truck (referred to herein as the hit-run vehicle) moved from the number four lane into the number

three lane and collided with or sideswiped a 1961 white Ford sedan (referred to herein as the Bell sedan)[1] which was in the process of moving from the number two lane into the number three lane. The Bell sedan veered over toward lane one and struck the Winquist Chrysler on the right rear side panel of the car. The impact forced the Winquist Chrysler to begin rotating to the right. The car slid in a westerly direction across the freeway into the fourth lane striking the Hargrave pickup more or less head on. After the initial impact, both cars continued to slide over and down the embankment on the west side of the freeway.

The only real conflicts in the testimony concerning the issue of liability were as to the relative positions of the four cars involved in the accident, and as to the speed of the Winquist Chrysler at the time of the initial impact.

Plaintiffs' theory of liability was that defendant Winquist was exeeding the 55 mile-per-hour (MPH) maximum speed limit, that this constituted negligence per se, and that if Winquist had not been traveling at a speed in excess of 55 miles per hour (MPH) his car would have slid across the freeway in back of plaintiffs' vehicle rather than in front of it. Plaintiffs' accident reconstruction expert, Bruce Lent-Koop, so testified.

Winquist testified that he was going 55 MPH at the time he was initially hit by the Bell sedan. The Winquist Chrysler was equipped with cruise control, and Winquist testified that he had it set at 55 MPH. John Croy, an eyewitness to the accident, who was traveling in lane three or lane four of the freeway at the time, testified that "[t]he general traffic flow in all lanes of the freeway was the same which was in the vicinity of the speed limit. . . ." Mr. Croy also testified that the Hargrave pickup was in front of and to the right of the Bell sedan just prior to the initial impact. However, Stephen Serafino, another eyewitness, who was traveling in the number three lane, estimated that traffic in the number one lane (the lane defendant Winquist was traveling in) was traveling at "[a]pproximately 70." Plaintiff driver, Mr. Hargrave, testified that he was traveling at 50 MPH, that he heard a squealing of brakes to the left and rear of him, looked to his left and then saw defendant Winquist's green sedan coming from his left and passing him "very quickly," at first parallel to him and then curving as the car moved west across the freeway in front of him. Based upon Mr. Hargrave's version

---

[1]Neither the driver of the hit-run vehicle or the driver of the Bell sedan were parties to this action.

of the relative position of Winquist's and his own car and Hargrave's version of the evidence, Mr. Lent-Koop, plaintiffs' accident reconstruction expert, concluded that Winquist was traveling 65 to 75 MPH.[2]

The testimony of plaintiff Hargrave and witness Serafino placed defendant Winquist's Chrysler at a position in the fast lane, but to the rear of plaintiff's car and traveling at approximately 70 MPH. The testimony of defendant Winquist and witness Croy placed the Winquist Chrysler in the fast lane at a position parallel to or slightly in front of plaintiff Hargrave's pickup and traveling at 55 MPH.

Albeit conflicting, there was evidence that defendant Winquist had violated Vehicle Code section 22348 (the 55 MPH maximum speed limit). Plaintiffs claimed that they were entitled to negligence per se instructions. They requested that the jury be given "Vehicle Code Section 22348(a) or B.A.J.I. 5.32" followed by BAJI No. 3.45, and the trial court complied.[3] In addition, the trial court, at defendants' request, instructed the jury in the terms of BAJI No. 5.31 (prima facie speed limit) as follows:

"The [posted] speed limit [at the place] where the accident occurred was 55 miles per hour. This fact is one to be considered by you, together with all of the other evidence determining whether or not the [defendant] was negligent, but proof that a vehicle was traveling at a

---

[2]Mr. Lent-Koop testified as follows as to the basis for his opinion that defendant Winquist was traveling 65 to 75 MPH at the time of the accident:

"Well, first of all, the basis of my opinion is really common sense. Mr. Hargrave had stated that he had heard the screeching of the tires to his left rear, and I believe earlier today when I saw him testify that he testified to that—that he heard the screeching tires to his left rear and watched the Winquist vehicle pass him up.

"Well, we know that at the very least that the Winquist vehicle apparently came from this position to his left rear and eventually caught up with him and collided with him, so obviously the Winquist vehicle had to be going faster than the Hargrave vehicle."

[3]The trial court gave a modified version of BAJI No. 5.32 as follows: "*The maximum speed limit at the place where the accident occurred is provided in* [California] Vehicle Code, Section 22348 [a] [provides in part as follows:] 'No person shall drive a vehicle upon a highway at a speed greater than 55 miles per hour.'" (The italicized portions indicate the court's deletions, and the bracketed words indicate the court's additions.)

BAJI No. 3.45, also given at plaintiffs' request, provided: "If you find that a party to this action violated the [statute] just read to you [and that such violation was a proximate cause of injury to another or to himself], you will find that such violation was negligence [unless such party proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law]."

speed greater or less than 55 miles per hour does not, in and of itself, prove that the driver of that vehicle was or was not negligent.

"The test is: was the vehicle operated at a speed which violated the basic speed law of this State as set forth in Section 22350 of the Vehicle Code and which reads as follows:

"'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"A violation of this basic rule is negligence."

## I.

■ We have concluded that the trial court erred in giving the instruction on the prima facie speed limit (BAJI No. 5.31) requested by the defendants because that instruction was hopelessly in conflict with the instructions just given on negligence per se.

BAJI No. 5.32 and BAJI No. 3.45 instructed the jury that under Vehicle Code section 22348 no person shall drive a vehicle upon a highway at a speed greater than 55 MPH and that violation of that speed law is negligence unless the defendant could prove a justification or excuse. On the other hand BAJI No. 5.31 instructed the jury on the prima facie speed limit and stated, in effect, that defendant could exceed the 55 MPH speed limit if in so doing he did not violate the basic speed law. The use note for BAJI No. 5.31 states: "Do *not* use Instruction 3.45 (negligence per se) in connection with this instruction." In *Miller* v. *Northwestern Pac. R.R. Co.* (1962) 206 Cal.App.2d 500, 502 [24 Cal. Rptr. 99], the court stated that the giving of instructions on negligence per se when coupled with instructions on the prima facie speed limit would be error, and upheld the trial court's refusal to so instruct.

■ While the giving of conflicting instructions on negligence per se and on the prima facie speed limit was clearly error, a question remains. Was the giving of those instructions prejudicial in this matter? Defendants argue that plaintiffs could not have been prejudiced by the giving of the conflicting instructions because they were not entitled to negligence per se instructions in the first place and any error in giving such an instruction was error in plaintiffs' favor.

In determining that the giving of conflicting instructions was prejudicial error, the court in *Francis v. City & County of San Francisco* (1955) 44 Cal.2d 335 [282 P.2d 496], stated at page 341: "The giving of an erroneous instruction is not cured by the giving of other correct instructions where the effect is simply to produce a clear conflict in the instructions and it is not possible to know which instruction was followed by the jury in arriving at a verdict. [Citations.]" (See *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 447-449 [159 P.2d 958]; *Lane v. Pacific Greyhound Lines* (1945) 26 Cal.2d 575, 586 [160 P.2d 21].)

In the case before us, the jury was given special verdict forms to follow in making its decision. The special verdict forms (one as to each plaintiff) asked the following initial question: "Was the defendant negligent? Answer 'yes' or 'no.'" The jury answered "No," to this question; and, having done so, were not required to answer questions as to whether defendants' alleged negligence was a legal cause of injury to plaintiffs and other questions on comparative negligence issues. The jury's decision was based solely on the issue of negligence, the very issue upon which the conflicting instructions were given.

The jury might have believed that defendants were not negligent because they were not exceeding the 55 MPH maximum speed limit. If this was the basis for the verdict, the jury would not have reached the issue of law raised by the conflicting instructions and would not have been misled by them. The giving of conflicting instructions is not prejudicial where the jury could not have been misled. (*Saltzen v. Associated Oil Co.* (1926) 198 Cal. 157, 161 [244 P. 338].) However, if the jury believed that defendants were exceeding the 55 MPH maximum speed limit, it is not possible to know which of the conflicting instructions on the issue of negligence the jury followed in reaching its verdict. (*Miller v. Northwestern Pac. R.R. Co., supra,* 206 Cal.App.2d 500, 502.)

We also note that a substantial portion of defendants' attorney's argument to the jury in this case was centered around the law as stated in BAJI No. 5.31. This is a factor that must be considered in measuring prejudice under the guidelines set forth in *LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].

## II.

If, as defendants argue, plaintiffs were not entitled to negligence per se instructions, the giving of instructions on the prima facie speed limit could not have been prejudicial to appellant. ██ If, however, as we here determine, plaintiffs were entitled to negligence per se instructions, the giving of conflicting instructions on the prima facie speed limit was prejudicial unless it is determined as a matter of law that there was no causal connection between defendants' negligence (the violation of the 55 MPH maximum speed limit) and the injuries sustained by plaintiffs.

Evidence Code section 669 codified the doctrine of negligence per se, and that section provides, in part, as follows: "(a) The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." In *Cade* v. *Mid-City Hosp. Corp.* (1975) 45 Cal.App.3d 589, at page 597 [119 Cal.Rptr. 571], the court stated: "How the four elements of section 669 are considered is the subject of Law Revision Commission comment following that section in the Evidence Code. ██ The last two elements are determined by the trial court as a matter of law, since they involve statutory interpretation [citation], while the first two elements are regarded as factual matters to be determined by the jury."

██ While speed laws are generally safety measures, Vehicle Code section 22348, lowering the maximum speed limit to 55 MPH, was ostensibly enacted as a fuel conservation measure.[4]

---

[4]As enacted in 1973 the act provided in part as follows: "Sec. 4. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are: In order to institute more realistic reduced speed limits as a measure to help alleviate serious and far-reaching fuel shortages, it is imperative that the act go into effect at once." (Stats. 1973, ch. 1218, p. 2935). The former 65 MPH maximum speed limit has never been repealed. (Veh. Code, § 22349.) Moreover, 70 MPH remains the absolute maximum possible speed limit on State highways. (Veh. Code, § 22356.) In 1978, Vehicle Code section 22348 was amended to add, among other things, subdivision (c) which provides: "This section shall remain in effect 120 days from the date that the 55-mile-per-hour national maximum speed limit, as specified in Section 154 of Title 23 of the United States Code, is

Since Vehicle Code section 22348 was enacted as a fuel conservation measure, can it be said that plaintiffs' injuries resulted from an occurrence of the nature which the statute was designed to prevent and that plaintiffs were of the class of persons for whose protection the statute was adopted? The question is troublesome because the 55 MPH maximum speed limit has been retained, long past the time of the Arab oil embargo, in part because of its inherent safety features and in part because it has proved to be an effective oil conservation measure.

While the enunciated purpose of the change in the law reducing the maximum speed limit to 55 MPH may have been fuel conservation, we must recognize the fact that the general purpose of all speed laws is to prevent loss of control of vehicles, and resultant collisions, and to enhance public safety. Obviously, this general purpose was not abandoned when the Legislature lowered the maximum speed limit to 55 MPH.

Fortunately, in the case at bench we need not speculate about legislative intentions. Even if the maximum speed limit had remained at 65 MPH, plaintiffs would have been entitled to negligence per se instructions under the evidence presented here. Witness Stephen Serafino estimated traffic in defendants' lane to be traveling at 70 MPH and Bruce Lent-Koop, plaintiffs' accident reconstruction expert, placed defendants' speed at 65 to 75 MPH.

Thus, we conclude that the trial court did not err in giving negligence per se instructions as requested by plaintiffs. If the negligence per se instructions were proper, the prima facie speed law instruction was not. ■ Since there is no way of determining which of the conflicting instructions the jury followed in reaching its conclusion that defendant was not negligent, the error must be held to be prejudicial. (*Francis v. City & County of San Francisco, supra,* 44 Cal.2d 335, 341; *Schaffer v. Claremont Country Club* (1959) 168 Cal.App.2d 351, 358 [336 P.2d 254, 337 P.2d 139].)

### III.

We cannot determine, as defendants urge us to, that, assuming defendants' negligence, it did not as a matter of law, constitute a proximate

repealed." Section 154 provides for a national maximum speed limit of 55 miles per hour, and was also enacted as a fuel conservation measure. (See, Emergency Highway Energy Conservation Act, Pub.L. No. 93-239, 87 Stat. 1046, § 2 (a), 1973 U.S. Code Cong. & Admin. News, p. 1170; 1974 U.S. Code Cong. & Admin. News, p. 8011 et seq.)

cause of plaintiffs' injuries. It is true that, based on the facts revealed in this record, the jury might well have determined that the initial collision of the hit-and-run vehicle and the Bell sedan and the subsequent propelling of the Bell sedan into the right rear side panel of the Winquist Chrysler constituted independent intervening causes which superseded defendants' alleged negligence and absolved them of any liability. (See Rest.2d Torts, §§ 440-453.) However, it is obvious from the special verdict that the jury never reached the issue of causation in this case. ■ As was said in *Cline v. Watkins* (1977) 66 Cal.App.3d 174, at page 178 [135 Cal.Rptr. 838], "An independent intervening act is a superseding cause relieving the actor of liability for his negligence only if the intervening act is highly unusual or extraordinary and hence not reasonably foreseeable. [Citation.] Reasonable foreseeability in this context is a question for the trier of fact."

In light of the testimony of plaintiffs' accident reconstruction expert concerning the effect of the rate of speed of defendants' Chrysler on the manner in which the accident happened, it would be inappropriate for us to make any determinations concerning causation as a matter of law. It is a factual matter to be determined by the jury. (See discussions of speed as a function of cause in an accident situation in *Whinery v. Southern Pac. Co.* (1970) 6 Cal.App.3d 126, 129 et seq. [85 Cal.Rptr. 649]; *People v. Scola* (1976) 56 Cal.App.3d 723, 727-728 [128 Cal. Rptr. 477].)

## IV.

■ Finally, for the benefit of the trial court on retrial, we hold that the trial court did not err in instructing the jury on contributory, or more properly comparative, negligence as set forth in BAJI No. 3.50.[5] Contrary to plaintiffs' assertion, there was evidence to support the giving of this instruction.

Plaintiff, Robert Hargrave, testified that he first heard the screeching of tires, a sound which came from "my left rear." He looked to his left and saw the Winquist Chrysler parallel to him in the fast lane. He

---

[5]BAJI 3.50 provides, "Contributory negligence is negligence on the part of a plaintiff which, combining with the negligence of a defendant, contributes as a legal cause in bringing about the injury. [¶] Contributory negligence, if any, on the part of the plaintiff does not bar a recovery by the plaintiff against the defendant but the total amount of damages to which the plaintiff would otherwise be entitled shall be reduced in proportion to the amount of negligence attributable to the plaintiff."

watched the Chrysler "continuously" until it hit his car. He saw defendant Winquist "fighting the wheel," saw the Chrysler slide across the freeway in front of him, and slammed on his brakes at the last minute when it appeared defendant Winquist "turned the wheel into me." On cross-examination plaintiff Robert Hargrave testified that at first he thought defendants' Chrysler would slide across the freeway in front of him, and it was only at the last minute that he put on his brakes because it appeared a collision was inevitable. When asked why he didn't put on his brakes earlier, plaintiff answered, "Didn't put on the brakes then because I was busy watching." This constituted sufficient evidence to support the instruction on comparative negligence. It presented a question to the jury, namely whether a reasonable man in plaintiff's position would have started to brake to avoid the accident at a point earlier in time.

The judgment is reversed.

Stephens, J., and Ashby, J., concurred.

A petition for a rehearing was denied August 25, 1982, and the petition of respondent William Winquist for a hearing by the Supreme Court was denied October 7, 1982. Kaus, J., did not participate therein.