[Crim. No. 41639. Second Dist., Div. Six. Aug. 11, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
LINA STEWART, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Larry R. Pizarro, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Carol Slater Frederick, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**STONE, P. J.—**

### Statement of the Case

Lina Stewart, appellant, was charged by information with attempted robbery, assault with a deadly weapon and conspiracy to commit robbery. In addition, she was charged with using a weapon in the commission of the attempted robbery. Appellant pleaded not guilty. Appellant's motion to set aside the information was denied.

A jury trial resulted in guilty verdicts on all counts and an affirmative finding on the use allegation. Probation was denied. The sentences were ordered to run concurrently, amounting to a total of three years to be spent in state prison.

### Statement of Facts

On April 17, 1981, appellant and Patricia Hardeman entered into an agreement to commit a robbery. That same evening appellant and Hardeman found Robert Ussery and attempted forcibly to take his wallet. In the process of grabbing at Ussery and reaching into his pockets, appellant discovered a knife which she used to stab Ussery in the abdomen. After being

stabbed Ussery managed to get the knife back from appellant and yell for help. The altercation continued until Officer Harris heard the commotion, approached the scene and took all three parties into custody.

### Judge's Communication With the Jury in the Absence of Counsel

On Friday, November 20, 1981, the judge received a note from the jury. The note requested the judge to "read slowly the jury instructions regarding the crime of conspiracy" and indicated a preference for a written copy if possible. In his answer, the judge wrote that he was going to furnish the jury with all of the instructions. On Monday, November 23, 1981, the judge stated that on Friday on his own motion, all of the instructions were delivered to the jury as requested *prior* to advising counsel.

 Appellant contends that she was deprived of counsel at a critical stage of the proceedings. She asserts that this occurred when the trial court delivered written instructions to the jury without the presence of counsel and that the delivery directly violated Penal Code section 1138. Appellant asserts that this was harmful error.

 One who stands accused is entitled to the assistance of counsel at all critical stages of the proceedings under the Sixth Amendment of the United States Constitution. "The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defense.'" (*United States* v. *Wade* (1967) 388 U.S. 218, 225 [18 L.Ed.2d 1149, 1156, 87 S.Ct. 1926].) Right to counsel includes when the jury is deliberating. "[C]ourts are practically unanimous in holding that private communications between judge and jury are improper, and that all communications should be made in open court." (*People* v. *Alcalde* (1944) 24 Cal.2d 177, 189 [148 P.2d 627].)

 The delivery of written instructions to the jury without presence of counsel directly violated Penal Code section 1138 which reads as follows: "After the jury has retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." It was error for the trial judge to engage in communications with the jury without the presence of counsel. We now consider whether the error was harmful.

 The federal standard for determining harmless error is found in *Chapman* v. *California* (1966) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711,

87 S.Ct. 824, 24 A.L.R.3d 1065]. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." ■ California's standard for determining harmless error is found in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ■ The test for determining the harmfulness of error when a judge communicates with the jury outside the presence of counsel was set forth in *People* v. *Dagnino* (1978) 80 Cal.App.3d 981, 989 [146 Cal.Rptr. 129]. "It thus appears that while denial of counsel at the 'critical stage' of a criminal proceeding is not necessarily prejudicial as a matter of law, prejudice will be presumed where the denial 'may have affected' the substantial rights of the accused. Only the 'most compelling showing' to the contrary will suffice to overcome the presumption, and courts will not engage in 'nice calculations' in making such a determination."

■ In the case at bar, sufficient facts are present to rebut the presumption of harm. The communication between the bench and the jurors, outside the presence of counsel, can be separated into two parts. First, the jury requested additional information concerning the conspiracy charge. In response to this request the judge wrote that he would furnish the jurors with a written set of all instructions. Secondly, the judge had the instructions delivered to the jury.

We have examined the note written by the judge to the jury. Judge Stevens wrote directly upon the written request made by the jurors the following message, "I am going to furnish you all the instructions." We find nothing in this language which would create harm or prejudice to the appellant's case.

The second communication consisted of sending copies of all of the actual instructions. The appellant argues that had her attorney been present, her counsel would have requested that CALJIC No. 17.45[1] be included. We

---

[1]CALJIC No. 17.45 provides: "The written instructions now being given will be made available in the jury room during your deliberations (if you so request). They must not be defaced in any way.

"You will find that the instructions may be either printed, typewritten or handwritten. Some of the printed or typewritten instructions may be modified by typing or handwriting. Blanks in the printed instructions may be filled in by typing or handwriting. Also, portions of printed or typewritten instructions may have been deleted by lining out.

"You are not to be concerned with the reasons for any modifications that have been made. Also, you must disregard any deleted part of an instruction and not speculate either what it

have examined each page of the 52 pages of jury instructions submitted to the jurors. They are remarkably free of cross outs and interlineations. Virtually all marks placed upon the instructions consist either of printing, which clearly identifies the person or crime charged, and cross outs, which change the masculine pronouns to feminine pronouns when referring to the appellant or her female accomplice. While ideally CALJIC No. 17.45 would normally be included when the actual instructions are submitted to the jury, we cannot agree that the omission of this instruction under these circumstances amounted to harmful error.

Consequently, we find that sufficiently compelling evidence is present in the record to rebut the presumption of harmfulness.

### *Jury Interpretation of CALJIC No. 2.27*

■ Appellant contends that the trial court erroneously instructed the jury that the testimony of one witness was sufficient evidence to prove any fact in the case. This instruction was contained in CALJIC No. 2.27.[2] We find that the inclusion of this instruction was neither error nor prejudicial.

The appellant argues that the inclusion of CALJIC No. 2.27 created the possibility of her being convicted based solely upon the testimony of the accomplice. This result, the appellant asserts, would be in direct violation of Penal Code section 1111.[3] The appellant contends that the giving of CALJIC No. 2.27 amounted to a "misstatement of an important principle of law" and therefore is grounds for reversal. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663 [117 Cal.Rptr. 1, 527 P.2d 353].)

The appellant's characterization of CALJIC No. 2.27 as a misstatement of an important principle of law is incorrect. The jury instruction was beneficial to the appellant's case. The appellant was the only witness to testify as to her version of the facts. CALJIC No. 2.27 provided authority for the jury to find in favor of the appellant.

---

was or what is the reason for its deletion.

"Every part of an instruction whether it is printed, typed or handwritten is of equal importance. You are to be governed only by the instruction in its final wording whether printed, typed or handwritten."

[2]CALJIC No. 2.27 (1977 revision) was given to the jury as follows: "Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact [required to be established by the prosecution] to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

[3]Penal Code section 1111: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

Additionally, CALJIC No. 3.16[4] was also submitted to the jury. This instruction specifically identified Hardeman as the accomplice and required that the jury find corroboration of her testimony. CALJIC No. 3.16 is a specific jury instruction whereas CALJIC No. 2.27 is general in nature. ■ It has long been held that jury instructions of a specific nature control over instructions containing general provisions. (*Nickell* v. *Rosenfield* (1927) 82 Cal.App. 369, 377 [255 P. 760].) ■ Furthermore, we note that, "[W]hether a jury has been correctly instructed is not to be determined from consideration of a part of an instruction or one particular instruction, but from the entire charge of the court." (*People* v. *Hunter* (1956) 145 Cal.App.2d 64, 67 [303 P.2d 356].)

Although submitting CALJIC No. 2.27 to the jury, under these circumstances, was not error, we do believe that a better practice would be to modify the language of the instruction as follows: "Testimony which you believe given by one witness *whose testimony does not require corroboration* is sufficient for the proof of any fact . . . ." This language would serve to alert jurors to the special problems relating to accomplice testimony.

### *"No Contest" Definition*

■ The appellant contends that the trial court committed harmful error when it supplied the jury with a definition of "no contest." The jury had requested this definition because Hardeman, the accomplice, had testified that she had pled no contest to the charge of attempted robbery. The appellant asserts that the definition should not have been given because only the accomplice's motivation for pleading no contest was relevant and not the plea itself.

The appellant cites no authority to support this novel proposition. Patricia Hardeman was a key witness for the prosecution. Her credibility was a central issue throughout the entire case. A plea of "no contest" to a charge of attempted robbery would be relevant in assessing the accomplice's credibility. (Evid. Code, § 788.) Therefore, we conclude that the trial court did not err in supplying the jury with a definition of "no contest."

The appellant also asserts that the trial court erred in not supplying the jurors with the definition of nolo contendere, which defense counsel defined as, "I do not wish to contend." Instead the judge delivered the following definition: "'No contest' is the same or equivalent on the criminal side of

---

[4]CALJIC No. 3.16 stated: "If the crime of attempted robbery was committed by anyone, the witness [Hardeman] was an accomplice as a matter of law and her testimony is subject to the rule requiring corroboration.

the court (which this matter is) to a plea of guilty." In reviewing the definition given by the trial court we find that the judge's description of the plea was sufficiently precise to inform the jury appropriately. Additionally, the trial judge's explanation of the term was more accurate when compared with the Penal Code section 1016[5] definition than was the definition offered by defense counsel.

Accordingly, we find that no error was committed in delivering the judge's definition of "no contest" to the jury.

### Restricted Cross-examination

The prosecution called Patricia Hardeman, the accomplice, to provide testimony relating to each charge alleged in the information. During cross-examination defense counsel attempted to question the witness to determine if Hardeman's testimony was motivated by a desire to seek revenge against the appellant. The following discussion took place between defense counsel, the prosecution and the judge:

"Q. Do you think it is unfair, at this point, that you have been punished and she hasn't?

"Mr. CALVERT: I object, your Honor that—

"THE COURT: Sustained, that is—

"Mr. STODDARD: I think that goes to—

"THE COURT: Has no relevancy in this matter, what—

"Mr. STODDARD: —780, her attitude towards this action, bias, intent, or motive.

"THE COURT: Well, I don't think that is any motive, her reaction to—

---

[5]Penal Code section 1016: "There are six kinds of pleas to an indictment or an information, or to a complaint charging an offense triable in any inferior court:

" . . . . . . . . . . . . . . . . . . . . . .

"3. Nolo contendere, subject to the approval of the court. The court shall ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, *to a crime punishable as a felony,* shall be the same as that of a plea of guilty *for all purposes. In cases other than those punishable as felonies,* the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." (Italics added.)

"MR. STODDARD: I think, revenge is a motive, your Honor.

"THE COURT: I don't have any evidence of revenge.

"MR. STODDARD: I'm asking her, Judge—I haven't had a chance to ask the question.

"THE COURT: All she is doing, here—she is under oath, *telling the truth, that isn't revenge.* I don't think it goes to prejudice, either—sustained."

 The appellant argues that the trial court committed reversible error by denying defense counsel the opportunity to fully explore the witness' motivation in testifying against the appellant. Secondly, the appellant contends that the judge committed harmful error in proclaiming, in the presence of the jury, that the accomplice was telling the truth.

We agree with the appellant on both points. Evidence Code section 780 specifically authorizes this type of inquiry into the witness' motive or bias: "Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following . . . . (f) The existence or nonexistence of a bias, interest, or other motive." " 'It is always proper for a party against whom a witness has given damaging testimony to show out of the mouth of the witness himself, if he can, or by other sources, if necessary, that such witness has an unusual interest in the outcome of the case. . . .' " (*People* v. *Pierce* (1969) 269 Cal.App.2d 193, 200 [75 Cal.Rptr. 257].)

 The issue of the accomplice's feelings of bias and revenge was exceptionally relevant. Witness Hardeman provided testimony which was extremely damaging to the appellant's case. Had defense counsel been able to cast sufficient doubt on the witness' motivation for testifying, the jury could very well have rendered a different verdict.

The error in limiting the cross-examination of the accomplice was further aggravated by the judge's pronouncement that the witness was telling the truth. "In commenting on the evidence the judge may not withdraw material evidence from the jury's consideration or distort the testimony." (*People* v. *Brock* (1967) 66 Cal.2d 645, 650 [58 Cal.Rptr. 321, 426 P.2d 889].)

California Constitution, article VI, section 10.[6] permits a judge to comment on evidence. ■ Nevertheless, when the trial court expressed its opinion on the witness' veracity it simultaneously prohibited further attempts to impeach the accomplice based upon her prior conviction of the same crime appellant was charged with. In denying this method of impeachment the court withdrew material evidence from the jury's consideration.

■ "[W]hether a trial judge's comment on testimony and the credibility of witnesses has gone beyond judicial discretion is to be determined upon all of the circumstances of the case." (*People* v. *Shannon* (1968) 260 Cal.App.2d 320, 330 [67 Cal.Rptr. 207].) In analyzing the context in which a trial judge has commented upon the evidence it is important to determine whether or not the court made clear to the jury that its views were "not binding but advisory only." (*People* v. *Friend* (1958) 50 Cal.2d 570, 577-578 [327 P.2d 97].) CALJIC No. 17.32[7] was specifically designed to delineate for the jurors those statements which are simply the judge's advisory opinion and the areas in which the jury is to be the ultimate finder of fact. ■ In the case at bar the court did not give CALJIC No. 17.32 nor did it explain to the jurors that his assessment of the accomplice's veracity was merely a personal evaluation rather than a formal ruling of law.

■ As the California Supreme Court has recently stated, "The court's comments must be scrupulously fair and may not invade the province of the jury as the exclusive trier of fact." (*People* v. *Cook* (1983) 33 Cal.3d 400, 408 [189 Cal.Rptr. 159, 658 P.2d 86].) ■ We believe that the trial court, in limiting cross-examination of a key witness in a material area,

---

[6]California Constitution, article VI, section 10: "The Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings. Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition.

"Superior courts have original jurisdiction in all causes except those given by statute to other trial courts.

"The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is *necessary for the proper determination of the cause.*" (Italics added.)

[7]CALJIC No. 17.32 (4th ed. 1970) states in full: "I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest how you should decide any questions of fact submitted to you.

"If anything I have done or said has seemed to so indicate, you will disregard it and form your own opinion.

"At this time, however, and for the purpose of assisting you in deciding this case, I am permitted by the Constitution of California to comment on the evidence and the testimony and credibility of any witness.

"My comments are intended to be advisory only and are not binding on you as you are the exclusive judges of the questions of fact submitted to you and of the credibility of the witnesses.

"You should disregard any or all of the comments if they do not agree with your views of the evidence and the credibility of the witnesses."

coupled with commenting on the credibility of that witness, without informing the jury that its statements were merely its personal opinion, committed serious error.

Accordingly, the decision of the trial court is reversed.

In light of our decision to reverse the conviction we find it unnecessary to discuss the sentencing issues raised by appellant.

Abbe, J., and Gilbert, J., concurred.