FOURT, J.
 

 This is an appeal from a judgment of conviction of escape.
 

 In an information filed in Santa Barbara County on Octo
 
 *466
 
 ber 14, 1965, defendant was charged with escape in violation of section 4532, subdivision (b), Penal Code, in that he did on September 19, 1965, “escape without force and violence from the Santa Barbara County Sheriff’s Honor Farm while confined therein as a prisoner of the Sheriff of the County of Santa Barbara and having been convicted of a felony, to wit, Attempted Armed Bobbery, in violation of Section 664-211 of the Penal Code of the State of California.” Defendant, represented by appointed counsel, pleaded not guilty. The case was set for trial. On December 1, 1965, defendant, with counsel, sought to, and did, withdraw the plea of not guilty. Defendant was then arraigned and he pleaded guilty to the offense as charged in the information filed October 14, 1965. Defendant, on December 13, 1965, was sentenced to the state prison. Defendant filed a timely notice of appeal.
 

 Appellant pleaded guilty and as a consequence there -are no judicially determined facts to recite. This court, however, pursuant to the Buies of Court has inspected the original file in this case and from the probation officer’s “Pre-Sentence Beport” (which report was designated by appellant to be included in the record on appeal) it can be ascertained that appellant was confined by the sheriff on the honor farm as a prisoner, having previously been convicted of a felony, namely, attempted armed robbery on or about June 3, 1965.
 

 On Sunday, September 19, 1965, defendant apparently was present for roll call check at about 5 p.m. at the honor farm. Sometime after that check defendant escaped from the confines of the honor farm, for at about 9 p.m., as he expressed it, he was “trying to make his way back into the Honor Farm after a nocturnal excursion after bed cheek.” An officer observed defendant on the outside of the 7-foot high fence, intoxicated and entangled in the barbed wire strands. The officer assisted defendant in disentangling himself from the fence whereupon defendant immediately proceeded to run up the hill at the back of the honor farm. Defendant was ordered and directed to return to the main gate entrance and to come inside; however, he refused all admonitions by the officers. Defendant was extremely abusive in his language, directing foul obscenities at the officers and he intimated that the only way he was going to be taken down from the hill was by being shot or dragged. The officers proceeded to the outside of the fence, subdued defendant and dragged him down the hill. Defendant spit at the officers and had to be restrained. A liquor bottle was found near where defendant was standing on the hill. Defendant now asserts that he was too intoxicated
 
 *467
 
 to formulate the intent to attempt an escape. The information charged defendant with escape, not an attempt to escape.
 

 After a plea of guilty properly received, the prosecution is under no duty to prove that the defendant committed the crime. That issue was resolved by the defendant’s plea.
 
 “A
 
 voluntary plea of guilty is the equivalent of a conviction of the crime. [Citations.] It amounts to an admission of every element of the crime charged.” (See
 
 People
 
 v.
 
 Jones,
 
 52 Cal.2d 636, 651 [343 P.2d 577].) In other words, the plea of guilty includes an admission of every element entering into the offense charged and does not raise any issue of fact. (See
 
 People
 
 v.
 
 Bechtel,
 
 124 Cal.App.2d 659, 660 [268 P.2d 1072].) Even had the information been defective (which it was not) the judgment after plea of guilty was proper, for the plea amounted to a waiver of any defect. (See
 
 People
 
 v.
 
 Beesly,
 
 119 Cal.App. 82, 87 [6 P.2d 114, 970];
 
 People
 
 v.
 
 Wester,
 
 237 Cal.App.2d 232, 236 [46 Cal.Rptr. 699].) There was without question an escape, as that term is defined in the law, in this case.
 

 It was appropriately stated in
 
 People
 
 v.
 
 Haskins,
 
 177 Cal.App.2d 84, 86-87 [2 Cal.Rptr. 34] : “The provisions of the Penal Code are not to be construed strictly but ‘according to the fair import of their terms, with a view to effect its objects and to promote justice. ’ (Pen. Code, § 4.) More specifically the Supreme Court said of the escape provisions of that code in
 
 In re Haines,
 
 195 Cal. 605, 621 [234 P. 883] : ‘Even if the statute might be held to be susceptible of either construction, we are justified in the public interest in adopting the one favoring the punishment of all escaping prisoners. The courts will be astute to avoid a result contrary to sound sense and wise policy. As was declared in the text-book from which we have quoted, “while the intention of the legislature must be ascertained from the words used to express it, the manifest reason and the obvious purpose of the law should not be sacrificed to a literal interpretation of such words.” [Citation.] ’ ”
 

 In
 
 People
 
 v.
 
 Quijada,
 
 53 Cal.App. 39, 41 [199 P. 854], it is stated: “The term ‘escape’ is not defined in the code, but a definition as clear and concise as any found in the authorities is, ‘the unlawful departure of a prisoner from the limits of his custody. ’
 

 “Among the cases cited, under ‘escape’ in Words and Phrases, are
 
 Wheeler
 
 v.
 
 State,
 
 39 Kan. 163 [17 P. 856], and
 
 Riley
 
 v.
 
 State,
 
 16 Conn. 47. In the former it is said: ‘The common legal definition of the term, however, means a viola
 
 *468
 
 tion or private evasion out of some lawful custody, ’ and in the latter it is declared: ‘An “escape” within the meaning of the law which makes it an offense to escape from the custody of the law, is any departure from prison, or from the custody of an officer, which is not authorized hy law. ’
 

 “There is no doubt that the testimony for the people herein brings this case within the doctrine of these decisions. When the defendant went beyond the prison walls without permission of the authorities he unlawfully departed from the limits of his custody, and it is immaterial that he did not get entirely beyond the territory connected with the prison grounds. It was his duty to remain within the walls as he very well knew, and when he transcended these limits he necessarily ‘violated his lawful custody. ’ ’ ’
 

 In
 
 People
 
 v.
 
 Sharp,
 
 174 Cal.App.2d 520, 522 [344 P.2d 796], the court said: “ (2)
 
 Is the evidence sufficient to support conviction of the crime charged? Yes.
 

 “Defendant contends he did not ‘escape’ from the prison (Pen. Code, § 4530) because he did not leave the prison grounds; also that proof of intent to escape is lacking.
 

 ‘ ‘ The prison was surrounded by a fence. The area between the buildings and the fence was known and used as a ‘ recreation area. ’ The fence marked the outer limits of the security area. Inmates were authorized to be outside the fence only when under suprevision following proper authorization. Going beyond that fence without permission would be an unlawful departure from the limits of an inmate’s custody even though when apprehended he was in a field (beyond the fence) which also was prison property. [Citation.] ”
 

 In this case appellant left the lawful limits of custody sometime after 5 p.m. September 19, 1965, got drunk and attempted to reenter the confines of lawful custody but in doing so became entangled in the barbed wire on the fence surrounding the farm.
 

 The judgment is affirmed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied December 27,1967.