[Crim. No. 15619. In Bank. Nov. 4, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS LOPEZ, Defendant and Appellant.

## COUNSEL

George P. Eshoo, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Robert R. Granucci, Edward P. O'Brien and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SULLIVAN, J.—Defendant Carlos Lopez was charged by information with murder (Pen. Code, § 187), burglary (Pen. Code, § 459), robbery (Pen. Code, § 211), and assault with a deadly weapon (Pen. Code, § 245). He admitted two prior felony convictions. After a trial by jury he was convicted of murder of the second degree and robbery of the first degree and was acquitted of burglary and assault with a deadly weapon. He appeals from the judgment of conviction.[1]

In the instant case we apply the principles explained in *People* v. *Satchell, ante,* page 28 [98 Cal.Rptr. 33, 489 P.2d 1361], in order to determine whether the crime of escape proscribed by section 4532 of the Penal Code is a felony inherently dangerous to human life and therefore capable of supporting a second degree felony-murder instruction. We conclude that it is not such a felony, that it was therefore error to give a second degree felony-murder instruction in this case, and that the error was prejudicial. We therefore reverse the judgment insofar as it convicts defendant of second degree murder. (See fn. 1, *ante.*)

On April 7, 1969, defendant was convicted of robbery and sentenced to state prison for the term prescribed by law. However, he was admitted to probation on the condition that he serve one year in the county jail.

---

[1]Although the appeal from the judgment necessarily includes the robbery conviction, defendant offers no argument on the subject of that conviction and the appeal is deemed abandoned with respect thereto.

On June 17, 1969, defendant and three other county jail prisoners escaped from the county jail by descending a rope fashioned from blankets. The escape was accomplished without detection on the part of jail authorities. The four men split into two groups, and defendant and one Clarence Galindo headed into a hilly area near the jail. There they remained at large for the better part of two days, eating only wild blackberries. On the evening of the second day they discovered a shed near a house in Pacifica and spent the night there. Early the next morning Galindo broke into the house in order to obtain food. There he brutally assaulted, with a pair of metal shears, the occupants, an elderly man and wife.

Defendant Lopez, who had not entered the house with Galindo, came in a few minutes later after the elderly man had been struck down and the assault upon the woman by Galindo was in progress. Defendant and Galindo then discarded their jail coveralls and put on clothing belonging to the elderly man. They ate some food and, taking money belonging to the victims, called for a taxi. However, before it arrived they were arrested at the house by police, who had been alerted by a neighbor. The elderly man died of his wounds; his wife, although seriously injured, survived the attack.

At his separate trial[2] defendant testified that when Galindo decided to break into the house, he (defendant) tried to dissuade him from the project and, when he was unable to do so, left Galindo and walked away from the house toward the woods; that he ran back to the house when he heard the woman screaming; that he went to the bedroom and found the elderly man lying in his own blood on the bed and Galindo, who had gone beserk, wildly striking the woman with the metal shears; that he (defendant) pushed Galindo away from the woman and persuaded him to stop the attack; and that then, deciding to make the best of the situation, he prepared breakfast, changed clothes, and called the taxi.

The trial court instructed the jury on the definition of murder and malice (CALJIC No. 301 (supp.))[3] and the degrees of murder (CALJIC Nos. 302 and 302-A). It also instructed on first degree felony murder based upon robbery and/or burglary (CALJIC No. 302-F)[4] and gave special instruc-

---

[2]Seven days after judgment was entered against defendant, Galindo entered a plea of guilty to first degree murder and was sentenced to life imprisonment. The remaining counts charged against him were dismissed.

[3]Unless otherwise indicated, all references to "CALJIC" herein are to California Jury Instructions—Criminal (rev. ed. 1958). The abbreviation "supp." in parentheses following any instruction indicates that reference is made to the 1967 pocket supplement to that work. At the time of trial the 1970 third revised edition had not yet been published.

[4]The version of CALJIC No. 302-F given by the court was substantially that which later appeared as CALJIC (3d ed. 1970) No. 8.21.

tions relating the first degree felony-murder rule to the facts of the particular case. The jury was instructed on premeditation in the language of CALJIC No. 303 (supp.).

On the subject of second degree murder the trial court gave, in addition to the general instruction (CALJIC No. 305 (supp.)), the following second degree felony-murder instruction: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a direct causal result of the commission of or attempt to commit a felony inherently dangerous to human life, namely, the crime of *escape,* and where there was in the mind of the perpetrator the specific intent to commit such a crime, is murder of the second degree. [Par.] The specific intent to commit *escape* and the commission of or attempt to commit such a crime must be proved beyond a reasonable doubt."[5] This instruction was given over defendant's objection.

The trial court went on to instruct the jury on burglary and robbery, but it did not instruct on the crime of escape. (See CALJIC No. 961 et seq., CALJIC (3d ed. 1970) No. 7.30 et seq.) The jury was also instructed on the law of principals and aiding and abetting (CALJIC Nos. 91, 91-E, 91-F (supp.)). No manslaughter instructions were given or requested.

The jury found defendant guilty of murder of the second degree, guilty of robbery of the first degree, not guilty of burglary, and not guilty of assault with a deadly weapon.

Defendant unsuccessfully moved for a new trial on the ground, among others, that the second degree felony-murder instruction should not have been given. He urged (1) that the crime of escape is not a felony inherently dangerous to human life and therefore will not support a second degree felony-murder instruction, and (2) that in any event the crime of escape had terminated when the homicide occurred. On this appeal from the judgment of conviction he raises the same arguments. Because we agree that the crime of escape is not inherently dangerous to human life and therefore will not support a second degree felony-murder instruction, we do not reach defendant's second argument.

---

[5]Although CALJIC (3d ed. 1970) had not been published at the time of trial, the second degree felony-murder instruction given was identical to that which subsequently appeared in that edition—the underscored words being added by the court as contemplated by the instruction to fit the circumstances of the particular case. Apparently the former second degree murder instruction (CALJIC No. 305 (supp.)) was broken down into three instructions (now CALJIC (3d ed. 1970) Nos. 8.30, 8.31, and 8.32) following our decision in *People* v. *Sears* (1965) 62 Cal.2d 737 [44 Cal.Rptr. 330, 401 P.2d 938], and copies of the new instructions were distributed by the Committee on CALJIC of the Los Angeles Superior Court on December 27, 1968, prior to the trial of the instant case.

The crime of escape which defendant committed by his unauthorized departure from the county jail is proscribed by section 4532 of the Penal Code.[6] That section, which is set forth in full in the margin, as revised in 1969,[7] renders felonious a great variety of escapes and attempted escapes

---

[6]Section 4532 is but one of the many felony statutes which forbid escape from various state institutions. See, for example, Penal Code section 107 (public training school, reformatory, or county hospital); Penal Code section 2042 (California Vocational Institution); Penal Code section 4133 (county industrial farm); Penal Code section 4530 (state prison); Penal Code section 6133 (medical correctional institution); Welfare and Institutions Code section 1257 (California Youth Training School).

[7]"(a) Every prisoner arrested and booked for, charged with, or convicted of a misdemeanor, and every person committed under the terms of Section 5654, 5656, or 5677 of the Welfare and Institutions Code as an inebriate, who is confined in any county or city jail or prison or industrial farm or industrial road camp or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, or who is employed or continuing in his regular educational program or authorized to secure employment or education away from the place of confinement, pursuant to the Work Furlough Rehabilitation Law (Section 1208), and who thereafter escapes or attempts to escape from such county or city jail, prison, industrial farm or industrial road camp or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and, if such escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for not exceeding one year and one day, regardless of any prior convictions, or in the county jail not exceeding one year; provided, however, that if such escape or attempt to escape is by force or violence, such person is guilty of a felony and is punishable by imprisonment in the state prison not exceeding 10 years, or in the county jail not exceeding one year; provided, that when said second term of imprisonment is to be served in the county jail it shall commence from the time such prisoner would otherwise have been discharged from said jail.

"The willful failure of a prisoner, whether convicted of a felony or a misdemeanor, employed or continuing in his regular educational program or authorized to secure employment or education pursuant to the Work Furlough Rehabilitation Law (Section 1208) to return to the place of confinement not later than the expiration of a period during which, pursuant to that law, he is authorized to be away from such place of confinement, is an escape from such place of confinement punishable as provided in this subdivision.

"A conviction of violation of this subdivision, not by force or violence, shall not be charged as a prior felony conviction in any subsequent prosecution for a public offense.

"(b) Every prisoner arrested and booked for, charged with, or convicted of a felony who is confined in any county or city jail or prison or industrial farm or industrial road camp or who is engaged on any county road or other county work or who is in the lawful custody of any officer or person, who escapes or attempts to escape from such county or city jail, prison, industrial farm or industrial road camp or from the custody of the officer or person in charge of him while engaged on or going to or returning from such county work or from the custody of any officer or person in whose lawful custody he is, is guilty of a felony and, if such escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for not less than six months nor more than five years or in the county jail not exceeding one year; provided, that if such escape or attempt to escape is by force or violence, such person is guilty of a felony and is punishable by imprisonment in

from county and city penal facilities. The range of persons subject to its provisions extends from those committed as inebriates to those convicted of felonies. The assortment of custodial arrangements to which it applies includes county road work as well as actual confinement. The included modes of escape range from those involving force or violence to tardiness on the part of one engaged in a work furlough program.

 It is defendant's violation of this statute which was the basis of the second degree felony-murder instruction in this case.[8] We have concluded that the giving of such an instruction was error because the proscribed offense, viewed in the abstract, is not a felony inherently dangerous to human life.

 In the instant case, unlike in *People* v. *Satchell, supra, ante,* page 28, no prior decisions have determined whether or not violation of the subject provision affords a sufficient basis for application of the felony-murder doctrine. Thus we proceed directly to an application of the principles of *People* v. *Williams* (1965) 63 Cal.2d 452 [47 Cal.Rptr. 7, 406 P. 2d 647] and *People* v. *Phillips* (1966) 64 Cal.2d 574 [51 Cal.Rptr. 225, 414 P.2d 353] as those principles were elucidated in *Satchell.* The question before us is this: *Viewed in the abstract,* is the escape from a county or city penal facility an offense inherently dangerous to human life?

We answer this question in the negative. As we have indicated, the crime of escape proscribed by section 4532 comprehends a multitude of sins. It applies to the man who is tardy in returning from a work furlough as well as to the man who obtains a contraband weapon and decides to shoot his way out of jail. It applies to the committed inebriate who wanders off from a county road job in search of drink as well as to the desperate felon who seizes a hostage in order to bargain for his freedom. It applies to those who, like this defendant, fashion a rope from blankets, climb down it, and steal into the woods as well as to those who strangle a guard to obtain his key. We cannot conclude that those who commit nonviolent escapes such as those here suggested thereby perpetrate an offense which should logically serve as the basis for the imputation of malice aforethought in a murder prosecution. Because section 4532 draws no relevant distinction between

---

the state prison not exceeding 10 years, or in the county jail not exceeding one year; provided, that when said second term of imprisonment is to be served in the county jail it shall commence from the time such prisoner would otherwise have been discharged from said jail."

[8]Although the instructions to the jury did not include reference to any specific escape offense, it is clear that section 4532 was the only applicable provision. It is also clear that defendant violated that provision.

such escapes and the more violent variety,[9] it proscribes an offense which, considered in the abstract, is not *inherently* dangerous to human life and cannot properly support a second degree felony-murder instruction.

We reject the argument that all escapes, however nonviolent, are inherently dangerous because they invite efforts of prevention and apprehension by custodial and law enforcement officers. The possibility of violence during an escape can become an actuality only when, under the facts of the particular case, the escapee attempts violent resistance or, in his efforts to elude capture, conducts himself in a reckless manner. We cannot conclude that such a reaction on the part of escapees is so common as to be considered intrinsic to the crime of escape. The fact that such reactions do occur in some cases is not sufficient to support the conclusion that one who escapes from legal confinement thereby creates a situation inherently dangerous to human life.

The recent case of *People* v. *Nichols* (1970) 3 Cal.3d 150 [89 Cal.Rptr. 721, 474 P.2d 673], provides an instructive contrast. There we held that "the burning of a motor vehicle [Pen. Code, § 449a], which usually contains gasoline and which is usually found in close proximity to people, is inherently dangerous to human life." (3 Cal.3d at p. 163.) Thus we held that because of the *usual* circumstances surrounding the burning of a car, *any person* who committed that offense thereby posed a danger to human life— i.e., that the offense was per se dangerous. ■ The offense of escape, on the other hand, *in itself* involves no danger to anyone. Danger arises only from the conduct of the escapee. (Cf. *People* v. *Satchell, supra, ante,* pp. 42-43.) If that conduct results in a felonious act which is inherently dangerous to human life and does not merge with the homicide, the felony-murder rule will be applied to impute malice aforethought in any subsequent murder prosecution. If no such felonious act results, but a killing nevertheless occurs, the question of malice aforethought is to be determined according to basic murder principles.

■ It was error in this case to give a second degree felony-murder instruction based upon defendant's violation of section 4532 of the Penal Code, and the error was clearly prejudicial because it relieved the jury of the necessity of finding malice aforethought in the circumstances. By acquitting defendant of burglary the jury necessarily found that he was not

---

[9]The fact that section 4532 prescribes a greater punishment for escapes accomplished by force or violence does not in our view create two separate offenses—i.e., nonviolent escape and violent escape. The offense is *escape*. The circumstances of commission are relevant not to the offense committed but to the punishment to be imposed therefor.

an accomplice to Galindo's initial entry into the victim's house. By finding the murder to be of the second degree the jury necessarily concluded that the killing did not occur in the perpetration of the robbery of which defendant was found guilty. These considerations, together with the fact that defendant was acquitted of the assault upon the female victim, indicate that the jury believed defendant's story that he terminated his partnership with Galindo before the latter entered the house and revived the relationship only after he had stopped the assault on the female victim.[10] Accordingly, it appears that the second degree murder conviction resulted from the application by the jury of the erroneous felony-murder instruction based upon the offense of escape. Thus, prejudice is manifest.

Here, as in *People* v. *Satchell, supra, ante,* p. 28, we emphasize that the instant decision, while precluding application of the felony-murder doctrine to impute malice aforethought to those who kill in the course of an escape, does not hinder the prosecution in showing that the act was done with malice aforethought and was, therefore, murder. Upon determining that the crime of escape is not inherently dangerous to human life, we simply remove the short-circuit provided by the felony-murder doctrine and require that here, as in the normal major prosecution, the crucial mental state of malice aforethought be demonstrated to the trier of fact.

The judgment is reversed insofar as it convicts defendant of murder of the second degree. In all other respects the judgment is affirmed.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.

McCOMB, J.—I concur in the affirmance of the judgment of conviction for robbery of the first degree. I dissent from the reversal of the judgment of conviction for murder of the second degree because I do not believe the error has resulted in a miscarriage of justice. The judgment, therefore, should not be reversed, for the reason that article VI, section 13, of the California Constitution provides: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of

---

[10]The jury was instructed on termination of complicity in the language of CALJIC No. 91-F (supp.): "One who has knowingly and with criminal intent aided and abetted the commission of a crime may terminate his liability and end his responsibility for the crime by notifying the other party or parties of whom he has knowledge of his intention to withdraw from the commission of a crime and by doing everything in his power to prevent its commission. If notice to the other party or parties is impossible or impracticable he may end his responsibility by doing everything in his power to prevent the commission of the contemplated crime."

the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Respondent's petition for a rehearing was denied December 2, 1971.