[Crim. No. 45084. Second Dist., Div. Five. Nov. 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY LYDELL BREW, Defendant and Appellant.

**COUNSEL**

Ann Kough, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FEINERMAN, P. J.**—After a jury trial, defendant Jerry Lydell Brew was convicted of three counts of kidnaping (Pen. Code, § 209) and three counts of robbery (Pen. Code, § 211). Firearm use allegations relating to each of

the six counts were found to be true as well as a value allegation as to one of the robbery counts (Pen. Code, §§ 12022.5, 1203.06, subd. (a)(1), and 12022.6, subd. (a)). Defendant's motion for a new trial was denied and he was sentenced to life in state prison with the possibility of parole on the three kidnaping counts, the sentences to be served concurrently. As to the remaining counts and all special allegations, the court ordered execution of sentence to be stayed with the stay to become final upon completion of sentences on the kidnaping counts.

## BACKGROUND

Peter John Balk was a self-employed merchant who sold Snap-On tools from a large truck. On October 28, 1982, at approximately 9 a.m., he was parked on Prairie Avenue and was standing in the truck with Carlos Diaz and Hwang Kim when defendant and another person entered the vehicle. The defendant was carrying a gun and ordered everyone to get down on the floor. Defendant's companion then drove the truck away. After 10 to 20 minutes had elapsed, the truck was stopped and Balk, Diaz and Kim were ordered to stand up and were relieved of their valuables. Included in the items taken were wallets, watches and rings. Balk's pocket money and beeper were also taken. The three victims were then "kicked out" of the truck. At trial, each of the three victims identified the defendant as one of their assailants.

Balk's truck was recovered later that same day. It had been ransacked. A rental truck was parked nearby in which were found several Snap-On tools which had come from Balk's truck. Defendant was observed by police near the Snap-On truck. When Officer Douglas Kershaw approached him, the defendant ran away. The defendant was apprehended and taken to the police station. During the booking search, Kim's ring and a key chain bearing the inscription "Snap-On" were found on defendant's person.

Defendant testified that he knew that the Snap-On truck was stolen, but he stated that he had nothing to do with the robbery. He also admitted that he knew that the ring in his possession was stolen. However, he claimed that he had purchased the ring for $20 from some person who was near the truck. Defendant further testified that he saw the Snap-On key chain on the dashboard of the truck and picked it up and put it in his pocket because he believed that the keys might unlock something in the truck.

Defendant does not contest the sufficiency of the evidence. However, defendant contends the trial court committed prejudicial error and denied his right to assistance of counsel when it directed the court reporter

to reread portions of trial testimony to the jurors during jury deliberations without the knowledge or consent of defendant or his attorney.

The salient facts on this issue are as follows: The jury began its deliberations on May 26, 1983, at 1:30 p.m. During deliberations that afternoon, a judge covering for the judge who had tried the case received a note from the jury requesting that certain testimony be read back to the jury. At 3:22 p.m. on May 26, the court reporter entered the jury room to read back the testimony. The reporter returned to the courtroom at 3:30 p.m. The jury was excused at 4 p.m. On the following morning, May 27, the jury resumed deliberations at 9:30 a.m. and announced its verdict at 11:04 a.m. Neither defendant nor his attorney learned of the jury's request until after a verdict was returned. The note received from the jury was not put in the court file by the substitute judge, and no summary or statement of the question or questions asked by the jury is contained in the record. The court reporter did not make any record of the portions of the testimony read back to the jury, and the record contains no indication of the nature of the testimony read back to the jury.[1]

■ The People concede that ordinary procedures require that the trial judge apprise the parties in a criminal case of any communications from the jury. (Pen. Code, § 1138.)[2] This is to assure that timely objections may be made to any action by the court or jury which might be deemed irregular. (*People v. Hogan* (1982) 31 Cal.3d 815, 848-849 [183 Cal.Rptr. 817, 647 P.2d 93].) ■ The People also acknowledge that a jury request for the reading of testimony during deliberations is a critical stage of the prosecution to which the right to counsel applies. (*Id.*, at p. 849.) However, the People argue that the error committed by the court in this case did not come up to the level of prejudicial error.

DISCUSSION

In *People v. Hogan, supra,* 31 Cal.3d 815, the Supreme Court declared that a trial court's decision to provide a jury with evidence during its deliberations, "whether through the rereading of testimony or the provision of

---

[1]When testimony is read back to jurors by a court reporter during jury deliberations, the record should substantially conform to the following format: "The requested testimony of _____, as set forth in the note dated _____ from the jury on file in the court file, was read by the reporter."

[2]Penal Code section 1138 provides as follows: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

exhibits, requires the opportunity for counsel to assist his client." (*Id.*, at p. 849.) In *Hogan,* the appellant contended that he was denied the right to counsel when the trial judge, without notifying counsel, responded to jury requests to see various trial exhibits during deliberations. Included in the exhibits given to the jury was a jailhouse tape containing inadmissible and highly prejudicial material. The Supreme Court stated that "prejudice is presumed" if the denial of the right to counsel during jury deliberations may have affected substantial rights of a defendant and " '[o]nly the most compelling showing to the contrary will overcome the presumption.' " (*Id.*, at p. 849 citing *People* v. *Knighten* (1980) 105 Cal.App.3d 128, 133 [164 Cal.Rptr. 96].) In light of the inadmissible and highly prejudicial material in the jailhouse tape, the Supreme Court did not have to look far to determine that the presumption of prejudice had not been rebutted in *Hogan.*

 In this case it is clear that error was committed when the substitute judge failed to follow the procedures mandated in Penal Code section 1138 and when he failed to file with the clerk of the court the note submitted to the court by the jury requesting a rereading of certain testimony.

 Given the situation presented in this case, the applicable standard of reversability is that stated in *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

 We have examined the transcript of the court proceedings below and find it to be a unique document. It contains very few objections by either counsel and absolutely no testimony that we would consider prejudicial if it was reread to the jury. The record here is "squeaky clean" and is palpably distinguishable from the record in *People* v. *Hogan, supra,* 31 Cal.3d 815, where the jury listened to a jailhouse tape containing inadmissible and highly prejudicial material.

We also note that the evidence against defendant in this case was overwhelming. He was identified by all three victims, Balk, Diaz, and Kim, and each of the three witnesses corroborated the testimony of the others. In addition, items taken in the robbery were found on defendant's person when he was searched at the police station. Given this chronicle, and given the absence of any prejudicial material in the record, we find that there is a sufficiently compelling showing that the brief rereading of some testimony while the jury was deliberating did not affect defendant's substantial rights and the errors committed were harmless beyond a reasonable doubt.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 30, 1985.