[No. H001185. Sixth Dist. May 12, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND ANTHONY LOZANO, Defendant and Appellant.

## COUNSEL

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CAPACCIOLI, J.**—Defendant Raymond Anthony Lozano appeals from judgment of conviction entered after a jury found him guilty of escape (Pen.

Code, § 4532, subd. (a) (section 4532(a)).[1] The jury also found true an allegation that the escape was by force and violence. In this appeal, defendant claims that (1) he was deprived of his right to a jury trial on the issue of whether the escape was by force and violence; (2) he was deprived of his right to counsel at a critical stage of the proceeding; (3) the instructions concerning escape misled the jury on the issue of intent; and (4) the court misdefined "force or violence."

We hold that defendant's right to counsel was violated and reverse the judgment.

## FACTS

Viewing the entire record, as we must, in the light most favorable to the judgment and presuming in support thereof the existence of every fact the jury could have reasonably deduced from the evidence, we summarize the evidence as follows. (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

On June 14, 1984, defendant was at the Elmwood Minimum Security Jail in Milpitas serving a sentence for various misdemeanors. Between 1:30 and 1:45 a.m., after the inmates had been locked down and were supposed to be in their beds, Officer Mark Ramirez, who was patrolling the perimeter road of the facility for inmates and escape attempts, saw the silhouette of a person quickly approach him. Because the area is off-limits to inmates at that time, Ramirez thought it might be another deputy. When the person was about five feet away, Ramirez turned on his flashlight and saw the defendant.

Ramirez ordered him to stop and asked for identification. Defendant obeyed, and Ramirez took out handcuffs. After Ramirez had one of defendant's hands secured, defendant said his buddy was in the bushes nearby. When Ramirez turned to look, defendant ran off. Ramirez pursued and was able to grab defendant's uncuffed hand. Defendant, however, swung his other arm around and hit Ramirez in the face with the dangling cuff, stunning Ramirez and causing a laceration, some bleeding, and a bump. Defendant again ran off. Ramirez gave chase, losing his shoe and flashlight, but managed to catch up. This time, he tried to radio for help, but defendant grabbed the radio and threw it into the bushes, saying "You're not calling anybody." Ramirez then "bear hugged" defendant to keep him in place. Defendant said he had too much time left to do and would rather

---

[1] The abstract of judgment erroneously states that defendant was convicted of a violation of section 4532, subdivision (b).

Unless otherwise specified, all further statutory references are to the Penal Code.

take his chances out on the street. Then he turned Ramirez around and pushed him back toward some bushes. Ramirez fell, and defendant headed toward the perimeter road.

Ramirez caught up with and then tackled defendant. He was securing defendant's other hand when two other deputies, who had heard the scuffling, came to assist. All of them escorted defendant back to the compound. On the way back, defendant told Sergeant Roy Kimura where Ramirez's flashlight and radio were, and the officers found both. The radio's antenna was broken. Defendant also said he wanted to stop and retrieve personal belongings from his barracks. Kimura told defendant he thought it strange to want these items now, since he had tried to escape without them. Defendant responded that he did not expect to get caught. Later, at the processing center, Deputy Sheriff Allen Sparks asked Ramirez why he had not called for help. Defendant interrupted, explaining that he had broken and thrown Ramirez's radio away.

■ Defendant admitted that Ramirez found him in an unauthorized area. However, he explained that he only intended to go to the nearby liquor store and return and was not trying to escape permanently.[2]

Defendant testified that he did not intentionally use force or violence against Ramirez. He said that Ramirez put the handcuff on too tight, and when he complained, Ramirez hit him on the back with a flashlight. Only then did he run. Later, when Ramirez grabbed his uncuffed arm and pulled him back, he said he lost control of his other arm and the cuff accidentally flung around and hit Ramirez in the head. Defendant denied breaking and throwing Ramirez's radio and saying that his buddy was in the bushes and that he had too much jail time left. He admitted helping the other officers find Ramirez's flashlight but not the radio. He also admitted telling Kimura that he did not intend to be caught.

## DISCUSSION

### I. *Propriety of instructing on self-defense.*

■ Defendant contends that the court committed reversible error when, in response to a question from the jury, the trial judge gave a self-defense instruction without notifying defense counsel or otherwise affording him an opportunity to object to the instruction before it was given.

---

[2] Defendant's admitted conduct constituted both escape and/or attempted escape. (*People v. Herrera* (1967) 255 Cal.App.2d 469, 471 [63 Cal.Rptr. 96].)

## A. *Was there error?*

It is well-established where the jury has retired to deliberate and asks for supplementary instruction, the defendant's right to counsel under the Sixth Amendment to the federal Constitution requires that the trial court notify defendant or defense counsel and afford them an opportunity to object before responding to the jury's request. (*People v. Stewart* (1983) 145 Cal.App.3d 967, 972 [193 Cal.Rptr. 799]; *People v. Dagnino* (1978) 80 Cal.App.3d 981, 985-988 [146 Cal.Rptr. 129]; see *People v. Hogan* (1982) 31 Cal.3d 815, 848-850 [183 Cal.Rptr. 817, 647 P.2d 93].) Notification is also required by section 1138, which provides that any information requested by the jury, including clarifying instructions, be given to them "in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called." (*Ibid.*)

The Attorney General initially claims that defense counsel was properly notified concerning the self-defense instruction. (RB 21.) The record does not support this claim.

After retiring to deliberate, the jury sent two notes to the court. One requested "the definition of force and violence"; the other said the jury was confused "as to the definition of force and violence, as it applies to resistance: what does wrongful application of force mean?" Although the court spoke by telephone with defense counsel, there is no reporter's transcript of their conversation.

After the jury returned its verdict and was dismissed, the court, outside the presence of the prosecutor, defendant and defense counsel, explained on the record that it had sent the jury a modified copy of CALJIC No. 16.141, which is a battery instruction that defines "force and violence" (see fn. 7, *post,* p. 626.), and a BAJI instruction on self-defense.[3] The court further stated that before doing so he spoke with defense counsel over the phone, "[t]he instructions were objected to," and defense counsel would later be allowed to object on the record.

Thereafter, the court and counsel met and discussed the matter on the record. First, the court reiterated the instructions it had given to the jury. Then the following exchange took place: "[Defense Counsel]: Just very briefly, your honor. For the record I received a phone call at superior court, probably 3:00, from this court, advising me some additional instructions

---

[3] The self-defense instruction reads: "A person who is unlawfully attacked or reasonably believes he is about to be unlawfully attacked may use such force in self-defense to protect himself as reasonably appears necessary under the existing circumstances." (BAJI No. 7.55, former No. 6.75.)

would be given to the jury. I was advised when I arrived perhaps 20 minutes, half hour later, the instructions just mentioned by the court were given to the jury. [¶] The Court: I believe I read the instruction I was going to give to the jury over the telephone, told you I was going to give it. You said you were objecting to it at that time. [¶] [Defense Counsel]: I think it was a different instruction than what you actually gave. [¶] The Court: No. I read to you over the telephone what I actually gave. [¶] [Defense Counsel]: But you did add the self-defense instruction. [¶] The Court: I did add the self-defense instruction.... [¶] Court did find you, court did telephone you, court did tell you they were asking for response and a definition. [¶] Court on its own found the definition, read to you over the telephone what the court was going to give them as the definition." Thereafter, defense counsel formally objected to the self-defense instruction, saying that it was misleading and should not have been given.

The Attorney General points out that in relating events, both the court and defense counsel used the word "instructions" at various times and claims that these references prove that the court read defense counsel both the definition of force and violence and the self-defense instruction. We do not agree.

Although certain statements taken out of context may tend to support the Attorney General's claim, we note that the court said it found and read a "definition" to counsel and unequivocally agreed with defense counsel that it "added" the self-defense instruction, which is not a definition. In view of the entire exchange, we conclude that neither defendant nor defense counsel was properly notified concerning the self-defense instruction.

### B. *Does the error require reversal?*

We review the trial court's error under the *Chapman* standard and must reverse unless we find it harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People v. Hogan, supra,* 31 Cal.3d 815, 850; *People v. Brew* (1984) 161 Cal.App.3d 1102, 1106 [208 Cal.Rptr. 11].) "[W]hile denial of counsel ... is not necessarily prejudicial as a matter of law, prejudice will be presumed where the denial '*may have affected*' the substantial rights of the accused. Only the 'most compelling showing' to the contrary will suffice to overcome the presumption, and courts will not engage in 'nice calculations' in making such a determination." (*People v. Dagnino, supra,* 80 Cal.App.3d 981, 989, italics in original; accord *People v. Stewart, supra,* 145 Cal.App.3d 967, 973.)

Implying that the error was harmless beyond a reasonable doubt, the Attorney General asserts without discussion that the self-defense instruction "was, of course, helpful to the defense."

Defendant, on the other hand, claims that with proper notification, defense counsel could have tried to dissuade the court from giving the instruction because it was improper and misleading as to the crucial issue: the use of force or violence. He explains that his defense was that he did not use any force or violence and that the injury to Officer Ramirez was caused by an inadvertent, unintentional, and accidental swing of his arm. The instruction, however, interjected a self-defense theory that he neither raised nor relied upon and that is inconsistent with his actual defense, in that it suggested that he *intentionally,* but perhaps justifiably, hit Ramirez. He claims that defense counsel should have been given the opportunity to propose an instruction that was both responsive to the jury's question and consistent with his defense. This argument has merit.

In *People* v. *Dagnino, supra,* 80 Cal.App.3d 981, the trial court, without the consent or knowledge of defense counsel, responded to the jury's request for further instruction by giving it copies of certain instructions it had previously read. (*Id.* at pp. 984-985, 989.) As here, there was no record made of the proceedings, but the trial judge narrated the events on the record after the jury returned its verdict. (*Ibid.*)

On appeal, the court found the error prejudicial because, if notified, defense counsel might have asked that the instructions simply be reread or, upon the denial of such a request, that the court give a cautionary instruction concerning the use of written instructions (see CALJIC No. 17.45). The court also determined that "there are undoubtedly other measures, and precautions, able and conscientious counsel could reasonably have taken which 'may have affected' their clients' substantial rights." (*Id.* at p. 990.)

Here, defendant was deprived of the same opportunities identified in *Dagnino.* ▉▉ ▉▉▉ ▉▉ Moreover, it is impossible to gauge the effect that the court's sua sponte introduction of a self-defense theory may have had on the jury especially when it appears to have been confused concerning the meaning and application of the phrase "force or violence."[4] The jury might have taken the instruction as a cue from the court concerning the proper way to analyze the facts or as an implicit concession by the defendant that he intentionally hit Officer Ramirez. Under the

---

[4]We note that trial courts have a "duty to instruct, sua sponte, on general principles closely and openly connected with the facts," and this duty "encompasses an obligation to instruct on defenses." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Smith* (1986) 187 Cal.App.3d 666, 677-678 [231 Cal.Rptr. 897].) However, this duty arises "only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*Ibid.*) Clearly, a court has no duty to instruct sua sponte on self-defense where, as here, the defendant claims his conduct was accidental. (*People* v. *McCoy* (1984) 150 Cal.App.3d 705, 708-709 [198 Cal.Rptr. 94].)

circumstances, the presumption of prejudice is at least as strong as it was in *Dagnino,* where, as noted above, the court simply sent the jury previously given instructions. The Attorney General here, as there, has not made a "compelling" showing to rebut this presumption, and, therefore, the judgment must be reversed.[5]

Since the matter may be retried, we address certain of defendant's other contentions.[6]

## II. *Propriety of the instruction on "force or violence"?*

■ Defendant contends that the trial court erred in defining "force or violence" in accordance with the CALJIC No. 16.141, a battery instruction.[7] Noting that a battery can be committed by 'the least touching' and asserting that virtually all escapes involve the use of some degree of force or violence, he argues that under the court's battery instruction, all escapes become forcible escapes. He claims, however, that for there to be a meaningful distinction between simple and forcible escape, "force and violence" in section 4532(a) must be construed to mean "some degree of vehement physical action beyond the basic act." Such a construction would reserve the harsher forcible escape penalties for those who escape with excessive force or violence. This argument is meritless.

Contrary to the basic premise of defendant's argument, there are escapes that simply do not involve the use of any force or violence. As our Supreme Court stated, section 4532 "applies to the man who is tardy in returning from a work furlough as well as to the man who obtains a contraband weapon and decides to shoot his way out of jail. It applies to the committed inebriate who wanders off from a county road job in search of drink as well as to the desperate felon who seizes a hostage in order to bargain for his freedom. It applies to those who ... fashion a rope from blankets, climb down it, and steal into the woods as well as to those who strangle a guard to obtain his key." (*People* v. *Lopez* (1971) 6 Cal.3d 45, 51 [98 Cal.App.3d 44, 489 P.2d 1372].)

---

[5] Although in *People* v. *Brew, supra,* 161 Cal.App.3d 1102 and *People* v. *Stewart, supra,* 145 Cal.App.3d 967, the courts found similar error harmless beyond a reasonable doubt, those cases are factually distinguishable from this one.

[6] We do not, however, address defendant's contention concerning the court's instructions on intent.

[7] The court instructed the jury as follows: "As used in the foregoing instruction, the words 'force' and 'violence' are synonymous and mean any wrongful application of physical force against the person of another, even though it causes no pain or bodily harm or leaves no mark and even though only the feelings of such persons are injured by the act. The slightest unlawful touching, if done in an insolent, rude, or an angry manner, is sufficient. It is not necessary that the touching be done in actual anger or with actual malice; it is sufficient if it was unwarranted and unjustifiable."

Section 4532(a) draws a simple, unambiguous line between two types of escape: those involving the use of force or violence and those that do not. Defendant's argument alters the statute's clear focus from *whether* there was force or violence to *how much* was used. However, the Legislature did not qualify the phrase "force or violence" in any way; nor did it indicate an intent to limit the application of that phrase to only those who escape with "vehement physical action." Defendant cites, and we are aware of, no evidence of legislative intent suggesting that the higher penalties for forcible escape are *not* intended to apply to those who escape with only a minimal amount of force or violence.

" 'Courts may not read into a statute an exception not incorporated therein by the Legislature [citation], unless such an exception must reasonably and necessarily be implied in order not to "disregard or overturn a sound rule of public policy." [Citation.]' " (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 627 [232 Cal.Rptr. 50].) We can conceive of no public policy reason to interpret the statute so as to exempt those who escape with only slight force or violence from the penalties for forcible escape. On the contrary, viewed "in light of both the objective it seeks to achieve and the evil it seeks to avert" (*People* v. *Alday* (1973) 10 Cal.3d 392, 395 [110 Cal.Rptr. 617, 515 P.2d 1169].), the statutory language proscribes the use of any and all force or violence, i.e., "*any* wrongful application of physical force against property or the person of another." (CALJIC No. 7.31 (1979 revision), italics added.) Such an absolute proscription promotes the purpose of the statute: to deter escapes, especially those involving the use of force or violence. (*People* v. *Davis* (1985) 166 Cal.App.3d 760, 767-768 [212 Cal.Rptr. 673].) It also sends would-be escapees a clear and explicit warning about the enhanced risk of escaping with force or violence and affords maximum protection to potential victims of any amount of force or violence.

Given our analysis, we observe that where an escapee's force or violence is directed against a person, it is synonymous with the crime of battery as defined in section 242: "*any* willful and unlawful use of force or violence upon the person of another." (Italics added.)[8] In other words, the line between simple and forcible escape is crossed upon the commission of a battery. To conclude otherwise would be to equate those who escape without any force or violence with those who commit "minor" batteries. Such an equation, however, would cloud the distinction between simple and forcible escape and weaken the statute's deterrent/protective purpose.

---

[8] We express no opinion concerning the amount of force or violence against *property* necessary to commit escape by force or violence. However, in this case, defendant grabbed and broke Officer Ramirez's radio to prevent a call for assistance. Such conduct is clearly sufficient to support a finding the use of force or violence against property.

In light of our discussion, we find it both proper and appropriate to use battery instructions to clarify the phrase "force and violence" in section 4532(a). Thus, there was no error below.

### III. *Propriety of the instructions and verdict form.*

Defendant contends that his right to a jury trial was denied on the issue of whether he used force or violence. He claims that section 4532(a) establishes two distinct substantive crimes: escape and escape by force and violence, i.e., simple and forcible escape.[9] He argues that since the trial court entered judgment for forcible escape, he was entitled to a general verdict of *guilt* as to every element of that crime, including his alleged use of force and violence. He points out, however, that as directed by the court's instructions and the verdict form, the jury formally found him "guilty" of only simple escape and thereafter found true the allegation concerning force and violence. He claims this factual finding is not a finding of "guilt" as to forcible escape.[10]

Since we reverse on other grounds, we need not determine whether this procedure violated defendant's right to a jury trial so as to compel reversal. ■ However, as guidance for the trial court, we address defendant's claim that section 4532(a) establishes two separate offenses.

In support of this claim, defendant cites *People* v. *Best* (1983) 143 Cal.App.3d 232 [191 Cal.Rptr. 614]. In *Best,* the jury found the defendants

---

[9] Section 4532(a) provides in relevant part: "Every prisoner . . . convicted of a misdemeanor . . . who is confined in any county or city jail . . . and who thereafter escapes or attempts to escape from such county or city jail . . . is guilty of a felony and, if such escape or attempt to escape was not by force or violence, is punishable by imprisonment in the state prison for a determinate term of one year and one day, or in the county jail not exceeding one year; provided, however, that if such escape or attempt to escape is by force or violence, such person is guilty of a felony and is punishable by imprisonment in the state prison for two, four, or six years . . . or in county jail not exceeding one year . . . ."

[10] The information charged defendant as follows: "The District Attorney . . . hereby accuses Raymond Anthony Lozano of a felony, to-wit: a viol. of Calif. Penal Code Section 4532(A) (Escape) in that, on or about the 14th day of June, A.D., 1984, . . . the said defendant(s) did having been arrested and booked for and charged with a [misdemeanor], to wit: a violation of section 11550(b) of the Health and Safety Code . . . [and section] 23152a [California Vehicle Code], and while confined in the Elmwood Minimum Security Jail, did escape and attempt to escape from said place of confinement. [¶] It is further alleged that said defendant escaped and attempted to escape by force and violence."

At trial, the court instructed the jury on the elements of simple escape and explained that if they found that defendant escaped, they must then determine whether the "enhancement" allegation of force and violence was true or false.

The jury's completed verdict form reads: "We, the jury, find the defendant, Raymond Anthony Lozano guilty of a felony, to-wit, a violation of California Penal Code Section 4532(A) escape as charged in the Information. [¶] We further find the allegations of the escape by force and violence to be true.' "

guilty of forcible rape (§ 261, subd. (2)) and further found that they acted "in concert" (§ 264.1). (*Id.* at p. 237.) They were sentenced under section 264.1, which prescribes a higher set of base terms for forcible rape when it is committed "in concert." (Cf. § 264.) On appeal, the defendants claimed that section 264.1 is really an enhancement and argued that the trial court erred in refusing to consider striking it. (*Id.* at p. 235.)

The appellate court disagreed, stating that an enhancement "does not define a crime or offense [citation], but merely fixes an additional penalty to be added to the selected base term." (*Id.* at p. 236; see Cal. Rules of Court, rule 405(c).) The court noted that in contrast to the standard arming, use, and great bodily injury enhancements, section 264.1 neither uses the word "enhancement" nor sets out an "additional term" to be appended to a base term; rather, it provides for " 'confinement' for one of three prescribed base terms, just as other substantive crimes prescribe three base terms." (*Id.* at pp. 236-237.) The court also noted several Penal and Evidence Code sections that refer to section 264.1 "as a separate sex 'offense' or 'violation.' " (*Id.* at p. 237.) In view of this evidence, the court concluded that section 264.1 established a separate offense, i.e., rape by force in concert, and was not an enhancement subject, at sentencing, to a motion to strike. (*Ibid.*)

This analysis was adopted by the court in *People* v. *Beller* (1985) 172 Cal.App.3d 904 [218 Cal.Rptr. 488]. There, the defendant was charged and convicted of, inter alia, two counts of robbery (§ 211). (*Id.* at p. 906.) Under section 213, robbery is punishable by a term of two, three, or five years in prison. However, because the evidence showed that the robberies occurred inside an inhabited mobile home, the court sentenced the defendant under former section 213.5, which sets forth base terms of three, four, or six years for robbery in a dwelling. (*Id.* at pp. 907, 911.) On appeal, the defendant claimed that the court erred in imposing an "enhancement" under section 213.5. (*Id.* at p. 910.)

Citing *Best, supra,* the court found that former section 213.5 was not an enhancement because it does not add time to a base term. (*Ibid.*) The court pointed out that although sections 211 and 213 generally define and set forth the base terms for robbery, former section 213.5 (robbery in an inhabited dwelling) defined a more reprehensible form of robbery and provided harsher penalties. (*Id.* at pp. 911-912.) The court concluded that by adding more elements to the crime of robbery and prescribing different base terms, section 213.5 constituted a separate offense.[11]

---

[11] In 1986, the Legislature purposefully abrogated, in part, the holding in *Beller, supra,* by repealing section 213.5 and enacting section 212.5, which establishes first and second degree robbery. In so doing, the Legislature stated that "there is but one crime of robbery which is defined in Section 211 ... , and that certain forms of robbery are more aggravated and de-

In this case, section 4532(a) makes simple escape from jail by a misdemeanor prisoner an offense punishable by either one year and one day in state prison or one year in county jail. It also makes forcible escape an offense punishable by two, four, or six years in state prison or one year in county jail.[12] Since the Legislature added the element of force or violence to simple escape and prescribed a different and greater penalty for forcible escape, the reasoning in *Best* and *Beller* leads us to conclude that section 4532(a) establishes two separate substantive offenses.

The statutory scheme for escape supports this conclusion. Viewed together sections 4530 and 4532 cover escapes by incarcerated prisoners.[13] Section 4530 proscribes, inter alia, escape from state prison and establishes two types of escape, each of which is set forth in a separate subdivision. Section 4530, subdivision (a) makes forcible prison escape (and attempts) a felony punishable by two, four, or six years in state prison. Section 4530, subdivision (b) makes simple prison escape (and attempts) a felony punishable by sixteen months, or two or three years in prison.

In like fashion, section 4532 proscribes, inter alia, escape from *jail*.[14] However, it recognizes two types of *escapees,* each of which has its own subdivision. Section 4532(a) proscribes escapes (and attempts) by misdemeanor prisoners. Section 4532, subdivision (b) (section 4532(b)) proscribes escapes (and attempts) by felony prisoners. Although neither subdivision is further subdivided, both proscribe simple and forcible escape and set forth different penalties for each. Thus, sections 4532(a) and 4532(b) implicitly make the distinction between simple and forcible escape that is explicitly made by subdivisions in section 4530. Under both section 4530 and 4532, forcible escape is the gravest type of escape, subjecting the escapee to the most severe punishment.

Clearly, sections 4530 and 4532 are in pari materia, that is, they relate to the same class of persons (prisoners) and things (escapes) and share a

serving of greater punishment." (Stats. 1986, ch. 1428, No. 12 West's Cal. Legis. Service, p. 964, No. 7 Deering's Adv. Legis. Service, p. 548.)

[12] Although the statute calls simple and forcible escapes "felonies," they are, in fact, "wobblers," that is, they are punishable either by imprisonment in the state prison or by incarceration in the county jail. Such offenses are said to "wobble" between the two punishments and, therefore, between being considered a felony or a misdemeanor. (*People* v. *Holt* (1984) 37 Cal.3d 436, 452, fn. 7 [208 Cal.Rptr. 547, 690 P.2d 1207]; *People* v. *Kunkel* (1985) 176 Cal.App.3d 46, 51, fn. 3 [221 Cal.Rptr. 359]; see § 17.)

[13] However, see also section 107 [escape from public training schools, reformatories, or county hospitals]; section 2042 [escape from Deuel Vocational Institute]; section 4011.5 [escape from hospital]; section 4133 [escape from an industrial farm]; and section 4536 [escape by mentally disordered sex offenders].

[14] This section also proscribes escapes by those confined in an industrial farm or road camp or those authorized to work on a county road or other county work or authorized to work or studying away from the confinement facility. It also applies to those with permission to be away from their place of confinement but who fail to return.

common purpose: to deter escapes by those lawfully incarcerated in a confinement facility. (*People* v. *Davis, supra,* 166 Cal.App.3d 760, 763; see *People* v. *Diaz* (1978) 22 Cal.3d 712, 716 [150 Cal.Rptr. 471, 586 P.2d 952].) As such, we should read them together as one law and harmonize them if possible. (*Piazza Properties, Ltd.* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 622, 633 [138 Cal.Rptr. 357]; 58 Cal.Jur.3d, Statutes, § 108, pp. 483-484.)

Under section 4530, simple and forcible escape from prison are separate offenses. The Attorney General does not suggest otherwise, and their placement in separate subdivisions makes this fact explicit. It is, therefore, logical and consistent with section 4530 to conclude that simple and forcible escape from *jail* are also separate offenses. Conversely, it would be illogical to conclude that whereas forcible escape from prison is a separate crime, forcible escape from jail is not itself a separate crime but some sort of hybrid or enhanced form of simple escape.

We acknowledge that section 4532 does not place simple and forcible escape into separate subdivisions as does section 4530. However, the numbering of sections of a statute is "an artificial practice" and a matter of "convenience." (*Candlestick Properties, Inc.* v. *San Francisco Bay Conservation etc. Com.* (1970) 11 Cal.App.3d 557, 569 [89 Cal.Rptr. 897].) Hence, the absence of separate subdivisions is irrelevant and not determinative of whether section 4532(a) establishes one or two offenses. Moreover, as defendant points out, it is not unique for the Legislature to place more than one offense in a subdivision. For example, in section 288a, subdivision (c), the Legislature proscribed (1) oral copulation with a person under 14 and more than 10 years younger than the perpetrator; (2) oral copulation by force, violence, duress, menace, or fear of immediate injury; and (3) oral copulation by threat of reasonably possible future retaliation. Clearly the subdivision defines at least two separate crimes, having different elements but sharing the same Penal Code designation.

Finally we note that section 4532(a) provides, in relevant part, "A conviction of violation of this subdivision, not by force or violence, shall not be charged as a prior felony conviction in any subsequent prosecution for a public offense." This language indicates that forcible escape may be charged as a prior felony conviction and is, therefore, additional evidence that simple and violent escape are different crimes. (See *People* v. *Sedeno, supra,* 10 Cal.3d 703, 725 (dis. opn. of Draper, J.).)

The Attorney General relies on *People* v. *Lopez, supra,* 6 Cal.3d 45 and *People* v. *Davis, supra,* 166 Cal.App.3d 760 for the proposition that section 4532(a) does not establish two separate offenses.

In *Lopez, supra,* the court held that because escape viewed in the abstract is not a crime inherently dangerous to human life, it does not justify giving a felony-murder instruction. (*People* v. *Lopez, supra,* 6 Cal.3d at pp. 51-54; accord *People* v. *Sedeno, supra,* 10 Cal.3d 703, 721-722.) In a footnote the court added, "The fact that section 4532 prescribes a greater punishment for escapes accomplished by force or violence does not in our view create two separate offenses—i.e., nonviolent escape and violent escape. The offense is *escape.* The circumstances of commission are relevant not to the offense committed but to the punishment to be imposed therefor." (*People* v. *Lopez, supra,* at p. 52, fn. 9, italics in original.)

Defendant asserts, and we agree, that this footnote is dictum, in that it is not essential to the court's holding. First, the defendant in *Lopez* escaped without force or violence, and the issue was whether simple escape supports a felony-murder instruction. Therefore, it was not necessary for the court to opine that section 4532 does not make *forcible* escape a separate offense. (See *People* v. *Sedeno, supra,* 10 Cal.3d 703, 725 (dis. opn. of Draper, J.).)

Second, forcible escape can be committed by using wrongful force against a confinement facility rather than a person. (see CALJIC No. 7.31 (1979 revision).) Such an escape, viewed in the abstract, is not necessarily or inherently dangerous to human life. Therefore, even when viewed as separate offenses, neither forcible nor simple escape properly supports a felony-murder instruction. Clearly then the *Lopez* footnote was not an integral part of the court's holding. And our conclusion here does not conflict with that holding.

We do not lightly disregard our Supreme Court's dictum, for "[a] statement which does not possess the force of a square holding may nevertheless be considered highly persuasive, particularly when made by an able court after careful consideration, or in the course of an elaborate review of the authorities, or when it has been long followed." (9 Witkin, Cal. Procedure (3d ed. 1985) § 785, p. 756.) However, the dictum does not review relevant authority; recognize that section 4530, a parallel statute, then, as now, established two offenses (see Stats. 1970, ch. 570, § 1, pp. 1142-1143); or analyze section 4532 in a context where, as here, the principal issue is whether the section defines one or two crimes. Rather, the *Lopez* court's primary focus was on the applicability of the felony-murder rule, a rule the court has long sought to give the narrowest possible application. (See *People* v. *Dillon* (1983) 34 Cal.3d 441, 462-463 [194 Cal.Rptr. 390, 668 P.2d 697].) In view of the brevity of the court's comment, its placement in a footnote, and the context in which it appears, we doubt that it was intended to guide us in this case. Under the circumstances, therefore we are not bound by the

dictum in *Lopez*. (See Witkin, *supra,* §§ 783-785, pp. 753-757, and cases cited therein.)

The *Lopez* footnote also fails to answer the question of what the "force or violence" provisions in section 4532 are, if they do not establish the crime of forcible escape. In *People* v. *Davis, supra,* 166 Cal.App.3d 760, the other case cited by the Attorney General, the court concluded without analysis discussion, or citation to authority that they created an enhancement. (*Id.* at p. 767.)

With all due respect, we disagree with this characterization. As noted above, these provisions do not add more time to a base term; rather, they set forth a separate set of base terms. As such, they do not create an enhancement. (See *People* v. *Best, supra,* 143 Cal.App.3d 232, 236-237; *People* v. *Beller, supra,* 172 Cal.App.3d 904, 910; Cal. Rules of Court, rule 405(c). Cf. §§ 12022-12022.9.)

In sum, therefore, neither *Lopez* nor *Davis* persuades us that our analysis of section 4532(a) is incorrect.

Since under this section, forcible escape is a separate offense, it is clear that the trial court's instructions and the verdict form were misleading, if not erroneous. ■ Where, as here, a defendant is charged with forcible escape, instructions should not treat the element of force or violence as an "enhancement" or "special allegation" to be found true or false. (Cf. *Morris* v. *United States* (9th Cir. 1946) 156 F.2d 525 [169 A.L.R. 305].) Rather, the jury should be instructed that use (or knowledge of another's use) of force or violence is an element of the offense. (See *People* v. *Davis, supra,* 166 Cal.App.3d 760, 767-768.) Likewise, a verdict form should not present the issue of force or violence as a special allegation but should allow the jury simply to find defendant guilty or innocent of a single unified offense: forcible escape. Similarly, the document charging forcible escape should allege forcible escape as a single crime and not isolate certain elements in separate special allegations.[15]

The judgment is reversed.

Agliano, P. J., concurred.

**BRAUER, J.**—I concur in the judgment.

---

[15] Nothing we have said is intended to suggest that simple and forcible escape may not be charged in separate counts; or that if only forcible escape is charged, instruction on simple escape as a lesser included offense would be improper.

I agree with the scholarly dissent of the late Justice Sims in *People* v. *Dagnino* (1978) 80 Cal.App.3d 981, 990 [146 Cal.Rptr. 129] that the harmless error rule should apply to unauthorized communications between judge and jury. But even by that yardstick, reversal is compelled because the judge on his own submitted a self-defense theory to the jury which undermined the defendant's contention that the officer was injured accidentally and by inadvertence.

As to part III of the opinion, which deeply engages the attention of my brethren, defense counsel neither in his brief nor at oral argument upon repeated invitation could point to the slightest prejudice to the defendant; indeed, he conceded that the latter is ordinarily benefited by an instruction that the jury focus and make a specific finding on the most hotly contested element of the offense, here, whether violence was used. I would therefore shrug off this entire subject by alluding to the maxim "De minimis non curat lex."